RAYMOND B. SHERWOOD AND BEVERLY SHERWOOD, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Sherwood v. Commissioner
Docket No. 12018-84.
United States Tax Court
T.C. Memo 1988-544; 1988 Tax Ct. Memo LEXIS 573; 56 T.C.M. (CCH) 735; T.C.M. (RIA) 88544; November 29, 1988
*573 In furtherance of their farming activities, Ps constructed a barn, acquired and constructed various properties and improvements, incurred land clearing and contouring costs, and planted 45 almond trees. Ps also "donated" approximately 50 percent of their earnings to a charter of the Universal Life Church. Held, Ps' barn was not section 38 property. Held further, Ps failed to establish that unclaimed ITC attributable to property placed in service in prior years was currently available for use as a carryover. Held further, an irrigation pipe installed by Ps does not constitute a section 175 conservation expenditure and may not be expensed under I.R.C. section 179 as no election was attached to the return. Held further, costs associated with the planting of preproductive almond trees must be capitalized under I.R.C. section 278. Held further, Ps failed to establish that the land clearing and contouring expenses were properly deductible under I.R.C. sections 162, 175 or 182. Held further, Ps were negligent in deducting charitable contributions over which they never relinquished control. Raymond B. Sherwood, pro se. Debra A. Bowe, for the respondent. NIMS
MEMORANDUM FINDINGS OF FACT *574 AND OPINION NIMS, Chief Judge: On January 30, 1984, respondent determined a deficiency in petitioners' 1981 Federal income tax in the amount of $ 10,847. Respondent also determined additions to tax under sections 6653(a)(1) and (a)(2)[1] in the amounts of $ 542 plus 50 percent of the interest payable on the entire underpayment. Respondent's determinations were based upon petitioners' 1981 Form 1040 which was filed on April 15, 1982. Except for the question of negligence, all of the issues raised in the notice of deficiency have been settled by the parties. However, on January 13, 1984, approximately two weeks before the statutory notice was mailed, a second Form 1040 was received by the Fresno Service Center for petitioners' 1981 tax year. This second Form 1040, which was treated by respondent as an amended return, claimed additional deductions and credits. Taking into account the amended 1981 return, the issues for decision are: (1) whether petitioners are entitled to investment tax credits on the construction of a barn; (2) whether petitioners may claim investment tax credit carryforwards on their 1981 tax return for items of property purchased in 1978 and 1980, years previously *575 considered by this Court; (3) whether the costs of installing an underground irrigation pipe may be immediately expensed under sections 175 or 179; (4) whether expenses incurred in planting almond trees and clearing and contouring land may currently be deducted; and (5) whether petitioners are liable for the additions to tax for negligence. FINDINGS OF FACT Many of the facts have been stipulated by the parties and are found accordingly. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioners Raymond B. and Beverly Sherwood (hereinafter "petitioner" will refer to Raymond B. Sherwood) resided in Pleasant Hill, California, at the time they filed their petition. During 1981, Raymond Sherwood was employed as a pilot with Transamerica Airlines, and Beverly was employed as a salesperson at Montgomery Ward. In 1979, petitioners acquired a 28-acre parcel of land located in Winters, California. During the 1981 tax year, they expended the *576 following amounts: $ 4,282.00 in constructing a "barn," a structure with a class life of five years; $ 795.38 in clearing the land and changing the contour of the soil; $ 1,404.97 in planting 45 almond trees and 45 peach trees, all of which were in the preproductive stage; and $ 1,386.47 to install underground irrigation pipe on the property. Prior to 1981, petitioners acquired and placed in service the following assets in furtherance of their farming activities: [2]
Date
Useful
Property
Acquired
[3]Cost Life
Pump House
7/01/80
$ 1,608 15 years
Well
7/01/80
15,000
15 years
Compressor
5/10/78
2,000
5 years Trailer
5/08/78
1,750
5 years Tractor
3/03/78
5,750
5 years Petitioners did not claim any investment tax credits pertaining to these purchases on their timely filed 1978 or 1980 tax returns. Nor did petitioners amend their respective returns to claim the credits or raise the issue in our prior adjudication of their 1978 and 1980 tax years. [4] Petitioners' first action with regard to the alleged investment tax credits was including $ 1,661 as a "carryover of unused credits" on the amended 1981 return. This amended return was filed approximately four months before our adjudication of petitioners' 1978 and 1980 *577 tax years became final. No schedule was attached to the 1981 amended return showing the derivation of the carryover credit. During the year at issue, petitioners deducted $ 28,432.26 for "donations" made to the Unity and Faith Church, a charter of the Universal Life Church. These so-called donations *578 of approximately 50 percent of petitioners' income were deposited in a "church account" over which they had exclusive signature authority. Petitioners retained dominion and control over the donations and used part of the funds to pay personal living expenses. OPINION During the year in issue, petitioners were engaged in farming a 28-acre parcel of land. Some of their activities included the construction of a "barn," the planting of some peach and almond trees, the clearing and contouring of the land, and the installation of underground irrigation pipe. The issues for decision are whether the barn construction costs are eligible for the investment tax credit; whether assets acquired in prior years produced investment tax credit carryovers; whether the costs of the irrigation pipe, the almond trees, the land clearing and contouring may be deducted currently; and whether petitioners negligently understated their tax liability. Section 38 Property
For the relevant years in this case, section 38 allowed a credit against Federal income tax for qualified investments in property. Qualified property in turn was defined in section 48(a)(1) as: (1) IN GENERAL. -- Except as provided in this *579 subsection, the term "section 38 property" means -- (A) tangible personal property (other than an air conditioning or heating unit), or (B) other tangible property (not including a building and its structural components) but only if such property -- (i) is used as an integral part of manufacturing, production, * * * or (ii) constitutes a research facility * * * or (iii) constitutes a facility used in connection with any of the activities referred to in clause (i) for the bulk storage of fungible commodities (including commodities in a liquid or gaseous state), or * * * * (D) single purpose agricultural or horticultural structures * * * Such term includes only recovery property (within the meaning of section 168 without regard to any useful life) and any other property with respect to which depreciation (or amortization in lieu of depreciation) is allowable and having a useful life (determined as of the time such property is placed in service) of 3 years or more. * * * The parties agree that the structure in question has a section 168(c)(2)(B) class life of five years. Petitioners contend that their barn comes within the above definition as either a single purpose agricultural structure *580 (section 48(a)(1)(D)) or as "other tangible property" which qualifies as a bulk storage facility in petitioners' farming production activities (section 48(a)(1)(B)(iii)). Therefore, they argue that they should be allowed a $ 428 investment tax credit. Respondent contends that petitioners' barn is a general purpose structure as opposed to a single purpose agricultural structure as defined by section 48(p). [5] *581 He also contends that the barn constitutes a "building" as included in the general parenthetical exception of section 48(a)(1)(B) to "other tangible" section 38 property. We find that petitioners' barn is not section 38 property. In support of the barn's constituting an agricultural facility, petitioners refer us to our decision in Lesher v. Commissioner,73 T.C. 340 (1979), affd. per curiam 638 F.2d 64 (8th Cir. 1981). In Lesher the taxpayers constructed a facility for the storage of hay used in their cattle feeding operations. The facility, however, was customized by the taxpayers to permit the cattle to feed within the structure on the stored hay. After reviewing the detailed description of the structure and its function, we held that the storage of the hay was incidental to the use of the structure as a feeding facility. Moreover, there was some evidence that the cattle sought shelter in the facility when protection from the weather was necessary. 73 T.C. at 369. Accordingly, we held that the facility qualified as a single purpose agricultural facility under section 48(a)(1)(D). The facts contained in the record before us differ substantially from those in Lesher.Unlike the taxpayers in Lesher, petitioners did not use *582 the barn for the feeding and sheltering of livestock during the year. Rather, petitioner testified that the barn was "used only for the storage of hay and feed, has not ever been used for anything else or is it ever intended to be used for anything other than for storage of hay and feed." Because the livestock feeding and sheltering functions, as opposed to the incidental storage function, were the critical factors we relied upon in Lesher in finding that the facility came within the section 48(p) definition of a single purpose agricultural structure (i.e., a single purpose livestock structure), petitioners' reliance on Lesher is misplaced. Moreover, petitioner's testimony that their barn was used exclusively as a feed storage facility necessitates our finding that the structure's storage use was more than "incidental." Section 1.48-10(b)(2)(i), Income Tax Regs. Likewise, petitioners' exclusive use of the structure as a storage facility supports respondent's contention that the structure was not specifically designed and constructed for the housing, raising and feeding of livestock, as required by section 48(p). McKenzie v. Commissioner,85 T.C. 875, 897-898 (1985). Accordingly, *583 we find petitioners' barn to be a general purpose farming structure and not a single purpose agricultural (livestock) structure under section 48(a)(1)(D). We next consider whether the barn qualifies as a bulk storage facility within the section 48(a)(1)(B)(iii) definition of other tangible property. To qualify as other tangible property, a facility must be other than "a building and its structural components." Section 48(a)(1)(B); section 1.48-1(c), Income Tax Regs.; McKenzie v. Commissioner, supra at 894; A.C. Monk & Co. v. United States,686 F.2d 1058, 1060 (4th Cir. 1982). Within this context "building" has become a term of art. Munford, Inc. v. Commissioner,87 T.C. 463, 478 (1986), affd.    F.2d    (11th Cir. 1988). The determination of whether a facility or structure is a building in this context is made by examining both appearance and function. Section 1.48-1(e)(1), Income Tax Regs.; [6] *584 Loda Poultry Co. v. Commissioner,88 T.C. 816, 824 (1987); Munford, Inc. v. Commissioner,87 T.C. at 479. The "appearance test" has its genesis in the portion of section 1.48-1(e)(1), Income Tax Regs., which states that a building "generally means any structure or edifice enclosing a space within its walls, and usually covered by a roof . . ." Munford, Inc. v. Commissioner,    F.2d    (11th Cir. 1988), affg. 87 T.C. 463 (1986). In other words, this prong of the regulation's two-part test looks to whether the structure has the appearance of a building in the ordinary sense. Munford, Inc. v. Commissioner,87 T.C. at 479. While the record contains no photographs or specific descriptions, the parties' consistent use of the word "barn" in describing the structure persuades us that the structure has the appearance of a *585 building. Satisfaction of the appearance test is not, however, dispositive of whether petitioners' structure is a building under section 1.48-1(e)(1), Income Tax Regs. Rather, most decisions of this Court and other courts have tended to emphasize the "functional test." See Munford, Inc. v. Commissioner,87 T.C. at 479 and the cases cited therein. In particular, the Ninth Circuit (to which an appeal would lie in this case) has specifically rejected the appearance test in favor of the functional test. Thirup v. Commissioner,508 F.2d 915, 919 (9th Cir. 1974), revg. 59 T.C. 122 (1972). The functional test inquires whether the purpose of the structure at issue is a purpose ejusdem generis to the purpose described by example in the regulations. Consolidated Freightways v. Commissioner,74 T.C. 768 (1980), affd. on this point 708 F.2d 1385 (9th Cir. 1983); Thirup v. Commissioner, supra.In other words, in applying this test we must ask whether the structure in question performs a function similar to "apartment houses, factory and office buildings, warehouses, barns, garages, railway or bus stations, and stores." [7] *587 Section 1.48-1(e)(1), Income Tax Regs. (emphasis added). Petitioners have *586 failed to demonstrate that the function of the structure at issue, i.e., a storage building for grain and hay, is inconsistent with the function of a barn, a structure specifically enumerated by the regulation. See Catron v. Commissioner,50 T.C. 306, 314 (1968). On the contrary, barn is defined in Webster's New World Dictionary as "a farm building for sheltering harvested crops." Moreover, while not dispositive, we find petitioners' consistent use of the term "barn" highly probative in evaluating the function of their structure. After reviewing the record as a whole, we hold that petitioners' structure possesses the functional characteristics contemplated by the regulation. Accordingly, their structure is a building within the meaning of section 48(a)(1)(B) and not "other tangible property" qualifying for the investment tax credit. Investment Tax Credit Carryforwards
The next issue concerns whether petitioners are entitled to investment tax credit carryforwards arising out of purchases of a pump house, well, trailer, tractor, and compressor during the 1978 and 1980 tax years. Petitioners contend that the pump house, well, trailer, tractor, and compressor all qualify as section 38 properties. They further contend that their filing of an amended 1981 return (prior to the entry of our of decision regarding their 1978 and 1980 tax years) should be construed as a timely filed claim for investment tax credits. Respondent disputes that petitioners' acquisitions were qualified section 38 properties. In addition, he contends that even if the properties were qualified *588 under section 38 for investment tax credits, petitioners failed to establish that any portion of the credits generated in 1978 or 1980 were properly carried forward to 1981. We agree with respondent's contention that petitioners have failed to establish that a $ 1,661 carryforward of investment tax credits existed in 1981. Rule 142(a). It is well established that credits are a matter of legislative grace and the burden of showing the right to the claimed credits is on petitioner. Segal v. Commissioner,89 T.C. 816, 842 (1987), citing Interstate Transit Lines v. Commissioner,319 U.S. 590, 593 (1943); Rule 142(a). The only evidence supporting petitioners' right to the carryover credit is the $ 1,661 entry on petitioners' 1981 amended tax return. No evidence discloses the derivation of the petitioners' claimed carryover credits. Moreover, the void of information regarding petitioners' 1975-1980 tax years prevents us from independently verifying the presence or absence of "unused credits" ( section 1.46-2(c), Income Tax Regs.) available for carryover to 1981. Thus, even were we to assume that the properties petitioners placed in service during 1978 and 1980 were section 38 properties *589 and that the carryover of unused credits attributable to closed tax years could be carried over, [8] findings we need not make, petitioners have failed to establish that the any credits would remain after applying the annual limitation of section 46(a)(3) and carryover rules of section 46(b). [9] Mere notation of a carryover credit on a tax return does not sustain petitioners' burden of proving entitlement to such credit. See Roberts v. Commissioner,62 T.C. 834, 839 (1974); Jones v. Commissioner,25 T.C. 1100, 1104 (1956), modified on other grounds 259 F.2d 300 (5th Cir. 1958). Accordingly, no investment tax credit carryforward is allowed. Irrigation *590 Pipe Costs
We must next decide whether petitioners may immediately expense the $ 1,386.47 cost of irrigation pipe installed during 1981. Petitioners contend that these expenses qualify as either soil and water conservation expenditures under section 175 or as depreciable property to which section 179 applies. Respondent counters that the irrigation pipe is depreciable property and therefore not considered a deductible conservation expenditure under section 175. He also argues that taxpayer failed to make the appropriate election to apply the provisions of section 179 to the irrigation pipe, and that even if such election were made, the applicable 1981 aggregate dollar limitation was zero. We agree with respondent. Section 175 generally provides that a taxpayer may deduct expenditures paid or incurred during the taxable year for the purpose of soil or water conservation of land used in farming or for the prevention of erosion of land used in farming. Section 175(a). Qualified expenditures include amounts incurred for (i) the treatment or moving of earth, i.e., leveling, conditioning, grading, terracing, contour furrowing, and restoration of soil fertility, (ii) the construction, *591 control, and protection of diversion channels, drainage ditches, irrigation ditches, earthen dams, watercourses, outlets, and ponds, (iii) the eradication of brush, and (iv) the planting of windbreaks. Sections 175(c)(1) and 1.175-2(a), Income Tax Regs… Qualified expenditures do not, however, include expenditures allowable as a deduction without regard to section 175 or expenditures incurred in acquiring depreciable assets. Sections 175(c)(1)(A) and (B). Petitioners cite Rev. Rul. 70-225, 1970-1 C.B. 51, to support their position that the irrigation pipe constituted a deductible soil and water conservation expenditure under section 175. We do not find this revenue ruling to be persuasive because it addresses the construction of irrigation ditches, a conservation improvement specifically authorized by section 1.175-2(a), Income Tax Regs. By contrast, section 1.175-2(b), Income Tax Regs., specifically identifies "pipes" as depreciable property to which section 175 does not apply. While the record contains few details regarding the composition of petitioners' irrigation pipe, we are nonetheless persuaded that the pipe constitutes a capital expenditure, that it has a limited useful *592 life and that it is depreciable. [10]Section 1.175-2(b)(1), Income Tax Regs.[11]Section 175 is therefore not applicable. Petitioners claim they are entitled to expense the costs of the irrigation pipe under section 179. Entitlement to the benefits of section 179 is not automatic, but requires that an affirmative election be attached to the original return or to a timely filed amended return. Sections 179(a) and (c) and section 1.179-4(a), Income Tax Regs. We find no evidence that petitioners filed the appropriate section 179 election. Thus, section 179 is inapplicable to their 1981 tax year. Almond Tree Planting Costs
The next issue for decision is whether petitioners may currently expense $ 702.49 incurred in planting preproductive almond trees. Petitioners cite no authority in support of currently expensing the costs associated with planting *593 preproductive almond trees. Rather they recognize, as does respondent, that section 278(a) requires the capitalization of certain expenses incurred in the planting and early cultivation of citrus and almond groves: (a) GENERAL RULE. -- Except as provided in subsection (c), any amount (allowable as a deduction without regard to this section), which is attributable to the planting, cultivation, maintenance, or development of any citrus or almond grove (or part thereof), and which is incurred before the close of the fourth taxable year beginning with the taxable year in which the trees were planted, shall be charged to capital account. * * * We find that petitioners' expenditures fall squarely within the unambiguous language of section 278. Accordingly, petitioners may not currently deduct the costs of the almond trees planted during the year in issue. We should note that in their brief filed after trial, petitioners for the first time argue that the almond trees constitute section 38 property eligible for the investment tax credit. We do not address this issue because we view it as improperly pleaded under Rules 31(a) and 34(b). Gerber v. Commissioner,32 T.C. 1199, 1200-1201 (1959). *594 This issue was not mentioned in the petition, in the written stipulation of remaining issues submitted to this Court by both parties, or at trial. Moreover, this new matter is not merely an alternative theory in support of petitioners' position that the planting costs should be expensed, but rather, it in effect constitutes the adoption of the contradictory position that the costs were properly capitalized. While it is clear that inconsistent positions may be maintained (Rule 31(c)), we find it to be unfair to require respondent to address at the last minute an issue of first impression and potential complexity. It is possible that had the new matter been timely raised, respondent might have employed a different strategy in litigating this case. In reaching this conclusion, we are cognizant that petitioners are pro se. However, given petitioners' prior experience before this Court and their timely raising of the section 38 issue in the context of the barn, we do not consider it appropriate to permit them to raise this new issue now. Land Clearing and Contouring Costs
The next issue concerns whether $ 795.38 incurred in clearing and contouring farmland may be currently deducted *595 by petitioners. Petitioners maintain that these costs are fully deductible as either ordinary and necessary business expenses under section 162 or conservation expenses under section 175. In the event that we should determine the land clearing expenditures to be capital in nature, petitioners alternatively allege that they are nonetheless entitled to currently deduct $ 204.66 (25 percent of the $ 818.65 gross farming income shown on Schedule F) of the land clearing costs under section 182. Respondent contends that the expenditures incurred by petitioners are not deductible business or conservation expenses, but must capitalized. He further contends that section 182 does not permit a partial deduction of capitalized land clearing costs because petitioners derived no taxable income from farming during 1981 and failed to make the required election. We agree with respondent. In support of deducting the land clearing costs as ordinary and necessary business expenses, petitioners rely upon Rev. Rul. 59-42, 1959-1 C.B. 47, and Collingwood v. Commissioner,20 T.C. 937 (1953). Rev. Rul. 59-42 holds that expenditures for clearing brush from productive pasture land in order to maintain production *596 is an allowable business deduction. The ruling also states that where the land had never been productive, the cost of clearing brush from such land constitutes a capital expenditure. Similarly, our decision allowing the taxpayer to deduct the costs of terracing his productive farmland in Collingwood was premised upon a finding that terracing work did not convert the lands to a new or different use. 20 T.C. at 942. Thus, the deductibility of petitioners' land clearing and contouring expenses pursuant to Rev. Rul. 59-42 and Collingwood hinges upon establishing that the expenditure was an ordinary and necessary cost of maintaining productive land and not a cost of converting the land to a new or different use. Section 1.263(a)-1(b), Income Tax Regs.; Gleis v. Commissioner,24 T.C. 941, 950 (1955), affd. per curiam 245 F.2d 237 (6th Cir. 1957); Collingwood v. Commissioner, supra.
We find no evidence in the record that the land in question required regular clearing and contouring to maintain its productive use. Thus, no deduction of the land clearing and contouring cost is allowable under section 162. Section 175, as previously discussed, allows the taxpayer to deduct certain conservation *597 expenditures that would otherwise be capitalized. Only conservation expenditures incurred with respect to land used in farming qualify for treatment under section 175. The term "land used in farming" means land used (before or simultaneously with the expenditures) by the taxpayer or his tenant for the production of crops, fruits, or other agricultural products or for the sustenance of livestock. Section 175(c)(2). The taxpayer bears the burden of establishing that the land benefiting from the expenditure was land already under cultivation and not uncultivated land being brought into initial cultivation. AMFAC, Inc. v. Commissioner,626 F.2d 109 (9th Cir. 1980), affg. 70 T.C. 305 (1978); Rule 142(a). See also section 1.175-4(b), example (2), Income Tax Regs. Petitioner testified at trial that the major part of the land clearing activities consisted of changing the contour of the soil. To the extent the expenditures were incurred for changing the contour of the soil of farmland under cultivation, the expenditures may be deducted under section 175 (subject to the 25 percent gross farming income limitation of subsection (b)). The record, however, contains no evidence of land use. *598 Accordingly, petitioners have not established that the expenditures were incurred for land used in farming. Section 175 is therefore inapplicable. The land clearing expenditures are therefore properly capitalized. We next consider petitioners' alternative argument that section 182 permits a current deduction of $ 204.66. Section 182[12] *599 allows a taxpayer engaged in the business of farming to elect to treat certain land clearing expenditures as not chargeable to a capital account. Section 182(a). A taxpayer makes the section 182 election by attaching a statement to the income tax return for the taxable year for which such election is to apply. Section 1.182-6(a), Income Tax Regs. A properly executed election allows the taxpayer to deduct currently incurred land clearing expenditures to the extent of the lesser of $ 5,000 or 25 percent of the taxable income derived from farming during the taxable year. For this purpose, "taxable income derived from farming" means the gross income derived from farming reduced by the deductions allowed under chapter 1 (other than by section 182) which are attributable to the business of farming. Section 182(b). We have examined petitioners' return and find no statement specifying an election to currently deduct land clearing costs under section 182. Moreover, even were we to find such an election, petitioners have failed to establish that they generated taxable income from farming during the year. On the contrary, petitioners reported a net loss from farming operations on Schedule F of both their original and amended Federal returns. Accordingly, we find section 182 inapplicable. Negligence Addition Respondent's notice of deficiency determined additions to tax under sections 6653(a)(1) and (a)(2).[13] *601 Section 6653(a) provides an addition to tax for underpayments that are attributable to negligence or disregard of rules or regulations. Respondent's determination that petitioners were negligent or that they disregarded rules or regulations is presumed correct, and petitioners bear the burden of proving that the determination is erroneous. Bixby v. Commissioner,58 T.C. 757, 791-792 (1972). This burden requires a showing *600 that no part of the understatement was due to negligence or disregard of the applicable rules or regulations. Section 6653(a)(1). On their original return, petitioners deducted $ 28,432.26 for "donations" made to the Unity and Faith Church, a charter of the Universal Life Church. These donations were deposited in a "church account" and subsequently used to pay personal living expenses during the year in question. Petitioners have conceded that they were not entitled to charitable contribution deductions for the donations deposited in the church account. Moreover, they have failed to present evidence which would establish that they reasonably deducted these donations in compliance with established rules and regulations. We therefore hold that petitioners have failed to satisfy their burden of proof and sustain respondent's determination of a section 6653(a)(1) addition to tax. We similarly sustain respondent's determination that section 6653(a)(2) imposes an further addition to tax in the amount of 50 percent of the interest accrued on the portion of the understatement attributable to the disallowed charitable contributions. We do not, however, extend the section 6653(a)(2) addition to other portions *602 of the understatement. While the notice of deficiency determined the section 6653(a)(2) addition to apply to the entire underpayment, respondent subsequently limited the scope of the penalty during trial and briefs to the disallowed donation portion of the underpayment. Accordingly, we view him to have abandoned his determination with respect to the application of section 6653(a)(2) to all portions of the understatement not attributable to disallowed charitable contributions. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code applicable to the year in question and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. For purposes of this litigation, respondent concedes that petitioners were engaged in the trade or business of farming. ↩
3. The stipulated costs of the well, trailer, tractor and compressor differ substantially from the respective costs listed on the depreciation schedule attached to petitioners' amended return. After reviewing the record, we do not believe the stipulated costs of these items reflect the intent of either party. The stipulation in this regard will therefore not be given effect. Conklin v. Commissioner,91 T.C. 41 (1988); Stamos v. Commissioner,87 T.C. 1451, 1455↩ (1986) and cases cited therein.
4. On March 29, 1985, we rendered oral findings of fact and opinion pursuant to Rule 152(b) in the case of Sherwood v. Commissioner,↩ docket No. 26252-82. We found deficiencies in the amounts of $ 5,271, $ 3,560 and $ 3,840 for petitioners' respective 1978, 1979 and 1980 tax years.
5. For the relevant years, section 48(p) provided: (p) SINGLE PURPOSE AGRICULTURAL OR HORTICULTURAL STRUCTURE DEFINED. -- For purposes of this section -- (1) IN GENERAL. -- The term "single purpose agricultural or horticultural structure" means -- (A) a single purpose livestock structure, and (B) a single purpose horticultural structure. (2) SINGLE PURPOSE LIVESTOCK STRUCTURE. -- The term "single purpose livestock structure" means any enclosure or structure specifically designed, constructed, and used -- (A) for housing, raising, and feeding a particular type of livestock and their produce, and (B) for housing the equipment (including any replacements) necessary for the housing, raising, and feeding referred to in subparagraph (A). * * *↩
6. Section 1.48-1(e)(1), Income Tax Regs., insofar as here relevant provides: (e) Definition of building and structural components. (1) Generally, buildings and structural components thereof do not qualify as section 38↩ property. * * * The term "building" generally means any structure or edifice enclosing a space within its walls, and usually covered by a roof, the purpose of which is, for example, to provide shelter or housing, or to provide working, office, parking, display, or sales space. The term includes, for example, structures such as apartment houses, factory and office buildings, warehouses, barns, garages, railway or bus stations, and stores. * * *
7. In many factual settings, we have applied the functional test by inquiring whether the structure in question provides working space for employees which is more than merely incidental to the primary function of the structure. Munford, Inc. v. Commissioner,87 T.C. 463 (1986), affd.    F.2d    (11th Cir. 1988); Vail Associates, Inc. v. Commissioner,88 T.C. 1391 (1987). The absence of significant human activity within the structure, however, does not per se avoid building classification under the functional test. Rather, building classification is avoided when the absence or incidental degree of human activity is coupled with a structural function unrelated to the functions commonly associated with the structures enumerated in the section 1.48-1(e)(1), Income Tax Regs. See Catron v. Commissioner,50 T.C. 306, 310-311↩ (1968).
8. See Rev. Rul. 82-49, 1982-1 C.B. 5↩, wherein respondent takes the position that a taxpayer's failure to claim investment tax credits in the year the qualified property was placed in service does not prevent the taxpayer from claiming any "unused credits" (after applying the appropriate section 46(a)(3) limitation and carryover rules of section 46(b)) in an open carryover year. 9. During the 1978 and 1980 tax years, section 46(b) provided that excess credits would be carried back three years and then forward ten years. See also section 1.46-2, Income Tax Regs.↩
10. Respondent notes in his reply brief that the depreciation concession reached by the parties includes $ 104.00 depreciation for the irrigation pipe. ↩
11. See Guenther v. Commissioner,T.C. Memo. 1975-194↩ (new drain pipe used to conduct water from a lake to a cattle pasture held to constitute a capital expenditure with a useful life of 10 years).
12. Section 182 was repealed by the Tax Reform Act of 1986, Pub. L. 99-514, section 402(a), 100 Stat. 2221, applicable to all amounts paid or incurred after December 31, 1985, in taxable years ending after such date.
13. Section 6653(a)(2) read as follows during the year at issue: (2) ADDITIONAL AMOUNT FOR PORTION ATTRIBUTABLE TO NEGLIGENCE, ETC. -- There shall be added to the tax (in addition to the amount determined under paragraph (1)) an amount equal to 50 percent of the interest payable under section 6601 -- (A) with respect to the portion of the underpayment described in paragraph (1) which is attributable to the negligence or intentional disregard referred to in paragraph (1), and (B) for the period beginning on the last date prescribed by law for payment of such underpayment (determined without regard to any extension) and ending on the date of the assessment of the tax (or, if earlier, the date of the payment of the tax). Section 6653(a)(2) was enacted by section 722(b)(1) of Pub. L. 97-34 (Economic Recovery Tax Act of 1981), 95 Stat. 342, and made applicable to taxes the last date prescribed for payment of which is after December 31, 1981. Since petitioners are calendar-year taxpayers, the last date prescribed for payment of their 1981 income taxes was April 15, 1982. Sections 6151(a) and 6072(a). Therefore, section 6653(a)(2)↩ is applicable to the year at issue.