T.C. Memo. 2012-41

UNITED STATES TAX COURT

SCOTT P. LYSFORD AND PATTI D. LYSFORD, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10154-10.                    Filed February 13, 2012.

<u>Daniel J. Frisk</u>, for petitioners.

<u>Christina L. Cook</u>, for respondent.

## MEMORANDUM FINDINGS OF FACT AND OPINION

SWIFT, <u>Judge</u>:  Respondent determined $51,015 and $10,869 deficiencies in petitioners' respective 2006 and 2007 Federal income taxes, plus accuracy-related penalties under section 6662(a).[1]

After concession of some issues, the issues for decision are:  (1) for purposes of recapture and current expense deductions under section 179 and depreciation under section 167 relating to a Cessna 182 airplane, the extent to which petitioners have substantiated their business use of the airplane; (2) whether petitioners have substantiated their business use of various other assets; (3) whether petitioners have substantiated their tax bases in an S corporation and a limited liability company; and (4) whether petitioners are liable for the section 6662(a) accuracy-related penalties.

The trial of this case was held on March 1, 2011, in St. Paul, Minnesota.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

From 2003 to approximately April 2007 petitioners lived in Detroit Lakes, Minnesota. In August 2006 petitioners sold their home in Detroit Lakes, but they stayed in the Detroit Lakes home as renters until their new home in Frazee, Minnesota, was completed in April 2007.

At the time the petition was filed, petitioners resided in Frazee, Minnesota.

For many years petitioner Scott Lysford worked for United Airlines as a commercial airline pilot and was an active officer in the U.S. Air National Guard (National Guard).

Sometime in the 1990s Mr. Lysford earned an M.B.A. degree.

In 2002 when he was furloughed from United Airlines and apparently became a reserve officer in the National Guard, Mr. Lysford began working as an independent mortgage broker.

In 2003 petitioners incorporated Northshore Holdings, Inc. (Northshore), an S corporation owned 50% by each petitioner. Northshore apparently owned a number of real estate investment properties, and Mr. Lysford conducted some mortgage activity through Northshore. For the office of Northshore, petitioners used space in their home in Detroit Lakes.

Late in 2003 Mr. Lysford and two other individuals incorporated Trinity Mortgage, Inc. (Trinity), as an S corporation to conduct a mortgage loan business.

Mr. Lysford and the other investors each owned a one-third interest in Trinity. Trinity's principal office was in Forest Lake, Minnesota, approximately 200 miles from petitioners' residence in Detroit Lakes.

In addition to the office of Trinity's being in Forest Lake, Mr. Lysford's mother and apparently other Lysford family members lived in Forest Lake.

From 2003 through part of 2007 Mr. Lysford worked for Northshore and Trinity as an independent mortgage broker. Generally, Mr. Lysford conducted his day-to-day mortgage activity for both Northshore and Trinity from either his home in Detroit Lakes or his home in Frazee. Mr. Lysford's mortgage activity involved finding loan customers, processing loan applications, and communicating with customers, banks, lenders, title companies, and appraisers.

To conduct his work as an independent mortgage broker for Trinity, Mr. Lysford was not required to be physically present at Trinity's office in Forest Lake.

From 2003 through part of 2007 Mr. Lysford apparently had some responsibility for establishing and supervising maintenance of a computer network that allowed Trinity's independent mortgage brokers to work remotely from their homes. These responsibilities also did not require Mr. Lysford to be physically present at Trinity's office in Forest Lake.

In July 2005 in Northshore's name Mr. Lysford purchased for $68,500 and placed into service a Cessna 182 airplane. During that year Mr. Lysford also paid an additional $72,210 to overhaul the airplane.

During 2006 and 2007, from either his Detroit Lakes home or his Frazee home Mr. Lysford made weekly trips--usually for one day, but occasionally overnight--to Forest Lake, a distance of approximately 200 miles. To make the round trips to Forest Lake, Mr. Lysford would drive his car from his home to the local Detroit Lakes airport (a distance of approximately 2 miles when petitioners lived in Detroit Lakes and a distance of approximately 10 miles when they lived in Frazee). From the Detroit Lakes airport, Mr. Lysford personally and alone would pilot the Cessna 182 airplane to the airport in Forest Lake.

Mr. Lysford testified that his typical flights between Detroit Lakes and Forest Lake took approximately one hour and that for each flight his gas cost for the airplane was approximately $200.

At the Forest Lake airport, Mr. Lysford's mother generally would pick Mr. Lysford up in her car. Mr. Lysford would drop his mother off at her home, and he would use his mother's car to get around while in Forest Lake.

Occasionally, in bad weather Mr. Lysford would make the trip to Forest Lake in his personal automobile.

To document his frequent flights to and from Forest Lake, Mr. Lysford kept in his Cessna 182 airplane a small spiral notebook (what he refers to as a "flight log").  In this spiral notebook, Mr. Lysford would jot down only the date and general destination (i.e., the city) of each flight.  For example, in noting that on April 13, 2006, Mr. Lysford flew to and from Forest Lake, Mr. Lysford's entry in the notebook indicates only the following:

<u>2006</u>

<u>APR</u>

13    F.L.

To document his automobile mileage, in another spiral notebook Mr. Lysford jotted down similar sparse information relating to his automobile trips, indicating only the date and city to which he was driving.

Neither Mr. Lysford's two notebooks, nor any other evidence at trial (including Mr. Lysford's testimony) describes or identifies any loan customer, bank, title company, business meeting, or contact in or around Forest Lake that Mr. Lysford met with or had relating to his mortgage activity during the years in issue.

In 2006 petitioners apparently incurred $45,314 in additional unspecified airplane maintenance expenses relating to the Cessna 182 airplane.

During 2006 and 2007 Mr. Lysford conducted on behalf of Northshore an activity called Hockey Heroes in which he took, developed, and sold photographs of members of his son's youth ice hockey team.

During 2006 and part of 2007 Mr. Lysford was an investment partner with three other individuals in a real estate investment partnership by the name of Lakebreeze Estates, LLC (Lakebreeze).[2] In 2007 Mr. Lysford received $5,000 cash for the sale (apparently to the other partners) of his interest in Lakebreeze.

In 2007 Trinity ceased operating, and Mr. Lysford surrendered his one-third interest therein.[3]

On its 2005 Federal income tax return, Northshore claimed a depreciation deduction under section 167 relating to the $68,500 cost of the Cessna 182 airplane and expensed currently under section 179 the $72,210 airplane overhaul expenses Mr. Lysford paid in 2005.

Also, on its Federal income tax returns for 2005 and prior years, Northshore claimed deductions under section 179 for miscellaneous costs associated with a camera, computer software, DVD studio equipment, furniture, tools, a pressure

[2]The record is unclear as to whether the interest in Lakebreeze was owned by Mr. Lysford or by Northshore. This distinction is immaterial.

[3]The record is unclear as to whether Mr. Lysford received any cash or other property upon termination of his interest in Trinity.

washer, a generator, a trailer, and various other items of equipment (hereinafter generally referred to simply as other assets). Northshore also claimed depreciation deductions under section 167 relating to the use of space in Mr. Lysford's home for his office.

Northshore's Federal income tax returns for 2006 and 2007 reported income relating to Mr. Lysford's mortgage loan activity, Hockey Heroes, and other activities of Mr. Lysford.

All of the income and expense deductions reported on Northshore's 2006 and 2007 tax returns were passed through to petitioners on Schedules K-1, Shareholder's Share of Income, Deductions, Credits, etc., and reported on their individual joint Federal income tax returns.

On audit for 2006 and 2007 respondent determined that petitioners had not substantiated the business use of the Cessna 182 airplane and the other assets. Accordingly, respondent disallowed many of the above-claimed business expense and depreciation deductions relating thereto, and under section 280F(b)(2) respondent required recapture on petitioners' 2006 tax return of airplane and other

costs petitioners claimed as current expense deductions under section 179 for 2005 and prior years.[4]

Respondent also determined that for 2007 petitioners had not substantiated their bases in Lakebreeze and Trinity. Respondent disallowed the capital losses petitioners claimed relating to both entities, and respondent charged petitioners with capital gain relating to the termination of their investment in Lakebreeze.

With regard only to the few adjustments respondent made that are still in dispute, the table below compares the section 179 expense recapture, the capital gains and losses, the section 167 depreciation, and the section 179 current expenses as reflected on petitioners' filed 2006 and 2007 Federal income tax returns with those items as redetermined by respondent. Note that in the table for each income adjustment we show the amount of respondent's increase; for each expense deduction we show the amount respondent allowed, not the amount disallowed:[5]

---

[4]On audit and as a partial concession to petitioners, respondent allowed 10% of the business expenses and depreciation petitioners claimed relating to the Cessna 182 airplane and several other assets.

[5]To the extent respondent's adjustments have been conceded or are not contested by petitioners, they are not reflected in the schedule.

|  | 2006 | | 2007 | |
| --- | --- | --- | --- | --- |
|  | Claimed on Tax Return | Respondent's Increase in Income or Expense Deductions Allowed | Claimed on Tax Return | Respondent's Increase in Income or Expense Deductions Allowed |
| Income | | | | |
| Recapture under sec. 280F(b)(2) of sec. 179 expenses | - 0 - | $105,474 | N/A | N/A |
| Capital loss/gain | | | | |
| Lakebreeze | N/A | N/A | ($24,299) | $5,000 |
| Trinity | N/A | N/A | (1,000) | - 0 - |
| Expense Deductions | | | | |
| Sec. 167 depreciation | | | | |
| Airplane cost | $16,777 | 1,499 | 7,787 | 1,124 |
| Office | 333 | - 0 - | N/A | N/A |
| Sec. 179 current expenses | | | | |
| Airplane maintenance | 39,000 | - 0 - | N/A | N/A |
| Other | N/A | N/A | 5,110 | - 0 - |

Finally, respondent determined accuracy-related penalties under section 6662(a) for both 2006 and 2007.

## OPINION

Taxpayers have a responsibility to maintain records sufficient to determine their correct Federal income tax liability. Sec. 6001; Higbee v. Commissioner, 116 T.C. 438, 440 (2001).

Deductions are a matter of legislative grace, and taxpayers generally bear the burden of proving their entitlement to claimed deductions. Rule 142(a); New Colonial Ice Co., Inc. v. Helvering, 292 U.S. 435, 440 (1934).

Respondent argues that petitioners have not established that the Cessna 182 airplane and the other assets were used predominately in a qualified business use as defined in sections 179 and 280F and, therefore, that petitioners must recapture expenses claimed for 2005 and prior years relating thereto. Respondent also argues that petitioners are not entitled to the current expense deductions claimed under section 179 for 2006 with regard to the airplane. We agree.

Taxpayers may elect to deduct as current expenses the cost of section 179 property acquired and used in the active conduct of a trade or business and placed in service during the year. Sec. 179(a), (b), (d)(1); sec. 1.179-4(a), Income Tax Regs. However, to be eligible for current expense deductions under section 179, taxpayers must show that the business use of such property exceeds 50%. Sec. 1.179-1(e)(2), Income Tax Regs. (relating to section 179 property); see also sec. 280F(b)(3) (relating to listed property). If in any year taxpayers' business use of property falls to 50% or less, deductions previously claimed under section 179 are subject to recapture under section 280F(b)(2) if "listed" property or under section 179(d)(10) if not "listed" property.

Taxpayers are required to substantiate the business use of section 274(d)(4) listed property (such as an airplane used for transportation) for any year for which recapture under section 280F(b) may be required, even if the taxpayers have fully

depreciated the listed property in a prior year. Sec. 1.280F-3T(d)(3), Temporary Income Tax Regs., 50 Fed. Reg. 46038 (Nov. 6, 1985).

Section 274(d)(4) requires taxpayers to substantiate by adequate records or by sufficient evidence corroborating the taxpayers' own statements the amounts of the expenses, the time and place of the expenses or use of the property, and the business purpose of the expenses.

Section 1.274-5T(c)(2)(ii)(B), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985), provides that in order to constitute an adequate record of business purpose within the meaning of section 274(d), a written statement of business purpose generally is required. However, where the business purpose is evident from the surrounding facts and circumstances, a written statement of business purpose may not be required.[6] See id. ("For example, in the case of a

---

[6]Sec. 1.274-5T(c)(2)(ii)(C)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985), provides in pertinent part:

> For example, a taxpayer who uses a truck for both business and personal purposes and whose only business use of a truck is to make deliveries to customers on an established route may satisfy the adequate record requirement by recording the total number [of] miles driven during the taxable year, the length of the delivery route once, and the date of each trip at or near the time of the trips. * * *

salesman calling on customers on an established sales route, a written explanation of the business purpose of such travel ordinarily will not be required.").

With respect to the use of the Cessna 182 airplane, petitioners urge us to infer from the facts and circumstances that Mr. Lysford's flights to and from Forest Lake constituted a routine, established route by which he conducted mortgage-related business and that a written statement of the business purpose for his flights is not required. Mr. Lysford testified that all of his airplane flights and his automobile trips to Forest Lake were for business and that he did not describe in detail his use of the Cessna 182 airplane because, as a pilot with an "airline transport pilot" rating, he had no reason to log flight hours.

On the evidence before us, we conclude that while Mr. Lysford may have conducted some mortgage business in or around Forest Lake, petitioners have not substantiated the level of business use and purpose required under section 274(d). Other than Mr. Lysford's very general testimony, petitioners provided no credible evidence that Mr. Lysford sold any mortgages or met with specific clients, mortgage brokers, or title companies in or around Forest Lake. Neither Mr. Lysford's general business purpose nor his specific business purpose for making specific trips to Forest Lake from his home 200 miles away is evident from the facts and circumstances.

Mr. Lysford's entries in his spiral notebooks are wholly inadequate.  They merely list the date and destination of airplane and automobile trips.  No business purpose for the trips, no names of clients visited, and no description of business scheduled, conducted, or attempted is provided.  A list of dates representing Mr. Lysford's airplane and automobile trips with no identification of the people visited, the locations visited, the nature or purpose of the trips, or the business actually conducted falls well short of the substantiation required by section 274(d).    For 2006 petitioners have failed to show that their business use of the Cessna 182 airplane exceeded 50%, and we sustain respondent's determination that the $72,210 in airplane overhaul expenses deducted for 2005 under section 179 relating to the Cessna 182 airplane is subject to recapture.  For the same reason, we sustain respondent's disallowance of petitioners' $39,000 claimed section 179 current expenses for 2006 relating to the Cessna 182 airplane.

Petitioners provided no evidence of the cost or business use of the other assets for which they claimed expense deductions under section 179 for years before 2006.  We therefore sustain respondent's determination that petitioners' section 179 expense deductions claimed for prior years relating to these other assets are subject to recapture for 2006.

Sections 167 and 168 allow depreciation and accelerated cost recovery only for property used in a trade or business or held for the production of income. As noted, petitioners have failed to demonstrate a business use for the Cessna 182 airplane in excess of the 10% respondent allowed on audit. Petitioners also have failed to provide any evidence of the costs of the home office used in connection with Mr. Lysford's mortgage activity for 2006.

We sustain respondent's disallowance of the claimed depreciation deductions under section 167 relating to the Cessna 182 airplane for 2006 and 2007 and to the home office for 2006.

With regard to the deductions for expenses claimed for 2007 under section 179 relating to the camera, lens, computer, and other assets, petitioners have provided no documentation to reflect the existence, let alone cost or business purpose, of these items, and petitioners offered no testimony with regard thereto. We sustain respondent's disallowance of these claimed deductions.

As stated, respondent determined that petitioners were required to recognize a $5,000 gain on the sale of Mr. Lysford's interest in Lakebreeze. Because Lakebreeze was treated as a partnership for Federal tax purposes, the provisions of subchapter K of the Code and the regulations thereunder apply. Loss to a distributee may be recognized in an amount equal to the distributee's adjusted

basis over the amount of any money distributed to him. Sec. 731(a)(2); sec. 1.731-1(a)(2), Income Tax Regs. At trial petitioners offered various loan documents, deposit receipts, and bank statements, along with copies of their Schedules K-1 attached to their 2004 and 2005 joint Federal income tax returns, in an effort to substantiate their basis in Lakebreeze.

Petitioners have the burden to substantiate through adequate records their basis in Lakebreeze. See Rule 142(a); Welch v. Helvering, 290 U.C. 111, 115 (1933). The only credible evidence establishing petitioners' basis in Lakebreeze is a photocopy of a signed check from Northshore to Lakebreeze for $1,000, dated March 26, 2004. All other documents offered in support of petitioners' basis in Lakebreeze are inadequate. They are unsigned. They fail to identify the source of the funds, and in the case of documents purporting to show loans obtained by or on behalf of Lakebreeze, they fail to identify the borrower and are unsigned. The Lakebreeze Schedules K-1 are not credible evidence of petitioners' basis in Lakebreeze. See Wilkinson v. Commissioner, 71 T.C. 633, 636 (1979).

Petitioners have substantiated a basis of only $1,000 in Lakebreeze and are required to recognize a $4,000 capital gain in connection with the termination of

Mr. Lysford's interest therein.[7]  See sec. 732(a)(1); sec. 1.731-1(a)(1), Income Tax Regs.[8]

Section 6662(a) and (b)(2) imposes an accuracy-related penalty of 20% on any portion of an underpayment of tax attributable to a substantial understatement of income tax.  An understatement of income tax for a year is substantial if it exceeds 10% of the amount required to be shown on the Federal income tax return or $5,000.  Sec. 6662(d)(1).  Petitioners present no credible argument with regard to their liability for the section 6662(a) substantial understatement penalty, and we sustain respondent's imposition thereof.

We have considered all of petitioners' arguments, and to the extent not addressed herein, we conclude they are moot, irrelevant, or without merit.

---

[7]$4,000 is equal to the excess of cash distributed to petitioners from the sale of their interest, $5,000, over the $1,000 basis.

[8]Petitioners provided no documentation to substantiate a tax basis in Trinity. Further, petitioners failed to address this issue on brief.  Accordingly, petitioners are deemed to have waived or conceded any argument as to the correctness of respondent's disallowance of the $1,000 claimed capital loss relating to Trinity.  See Levin v. Commissioner, 87 T.C. 698, 722-723 (citing Rule 142(a) for the proposition that because "petitioners have made no argument with respect to * * * deductions claimed * * * [, they] are deemed to have conceded their nondeductibility"), aff'd, 832 F.2d 403 (7th Cir. 1987).

To reflect the foregoing,

Decision will be entered

under Rule 155.[9]

---

[9]At trial petitioners conceded that they are unable to substantiate the business use of several assets for 2006, thus triggering recapture of deductions that were claimed under sec. 179 with regard thereto in 2006 and prior years.  Petitioners, however, suggest that several of the assets subject to recapture of deductions claimed in prior years are not "listed" property as defined in sec. 280F(d)(4) and thus are not subject to the recapture rules of sec. 280F(b)(2), but rather are subject to the recapture rules of sec. 179(d)(10) and the regulations thereunder.  We expect the parties to resolve any questions regarding what constitutes "listed" property in their Rule 155 computations.