T.C. Memo. 2015-161

UNITED STATES TAX COURT

VALERY CHOUTOUO POUEMI AND SANDRINE ATEMEKENG, Petitioners
<u>v</u>. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1810-13.                 Filed August 17, 2015.

Valery Choutouo Pouemi and Sandrine Atemekeng, pro sese.

<u>Susan T. Mosley</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LAUBER, <u>Judge</u>: The Internal Revenue Service (IRS or respondent) determined a deficiency in petitioners' 2009 Federal income tax of $4,232.[1] The defi-

_____

[1]All statutory references are to the Internal Revenue Code (Code) in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

[*2] ciency is attributable to the disallowance of deductions for $30,062 of expenses reported on petitioners' Schedule C, Profit or Loss From Business, for 2009. These expenses were allegedly incurred in petitioner husband's business as a real estate sales agent. The disallowance of deductions for the Schedule C expenses resulted in corresponding adjustments to petitioners' earned income credit and child tax credit.

On August 20, 2013, petitioner wife requested relief from joint and several liability under section 6015(c). The IRS granted this relief in full on November 7, 2013. The parties have stipulated that petitioner wife is entitled to relief from joint and several liability for 2009 and that she is not entitled to a refund for 2009.[2]

The sole issue remaining for decision is whether petitioner husband is entitled to deductions for the expenses reported on petitioners' Schedule C. We conclude that he was not engaged in a profit-seeking "trade or business" during 2009 and that he failed to substantiate expenses underlying his claimed deductions in any event. We will therefore sustain the deficiency as determined by respondent.

---

[2]Section 6015(c) may relieve the requesting spouse of liability for the tax at issue, but it does not provide the requesting spouse with any type of credit or benefit that would result in any adjustment to the tax liability owed by the non-requesting spouse.

**[*3]**                    FINDINGS OF FACT

The parties filed a stipulation of facts with accompanying exhibits that is incorporated by this reference. At the time their petition was filed, petitioners were divorced and resided in separate locations in Maryland.

Valery Choutouo Pouemi (petitioner) was employed full time during 2007, 2008, and 2009 by Verizon as a service technician. This was an office job that required him to perform computer and network maintenance. He worked between 32 and 40 hours a week at this job, and his annual salary averaged about $60,000. At some point during 2009 he lost his job at Verizon and began receiving unemployment compensation from the State of Maryland. His application for unemployment compensation stated that he was available for full-time work.

Petitioner testified that he typically held two jobs, took continuing education classes, and "did real estate on the side." He produced a Virginia real estate license with an expiration date of March 31, 2009, and a Maryland real estate license with an expiration date of August 3, 2009. He testified that he subsequently renewed both licenses. Both licenses state that he was affiliated with "Union Plus Realty."

Petitioner testified that he worked on his real estate business on weekends, during the evenings, and during "down time" at his day job. He allegedly per-

[*4] formed research for potential clients, reviewed real estate listings, and drove potential clients in his car to view properties. He testified that he regularly showed houses and apartments to potential clients and entertained them.

Petitioner maintained no formal ledgers or books for his real estate business and had no business bank account. He had no real estate listings during 2009, the tax year at issue. He likewise had no real estate listings during 2008.[3] During 2007 he listed one property for sale; it was sold, netting him a commission of $9,457. That house was on Drumcastle Terrace in Germantown, Maryland, one block from petitioner's own residence.

That single commission represented the only income petitioner derived from his real estate activity during 2007-2009. For 2007 he reported on his Schedule C income of $9,457, expenses of $33,907, and a loss of $24,450. For 2008 he reported income of zero, expenses of $43,427, and a loss of $43,427. For 2009 he reported income of zero, expenses of $30,062, and a loss of $30,062. His reported expenses for 2009 included car and truck expenses ($15,244), parking and tolls

---

[3]Generally, each tax year stands on its own and must be considered separately. See United States v. Skelly Oil Co., 394 U.S. 678, 684 (1969). However, in cases where a taxpayer's profit motive is at issue, the circumstances surrounding a particular endeavor during years preceding (and sometimes succeeding) are often relevant to the Court's analysis. See, e.g., sec. 1.183-2(b)(6) and (7), Income Tax Regs.

**[*5]** ($1,288), tools ($3,552), cell phone ($1,801), text messaging ($341), Internet access ($748), wireless email ($220), computer maintenance ($420), office expenses ($630), staff meetings ($120), payroll processing ($120), bottled water for clients ($461), "personal marketing" ($850), and 19 additional categories of "other expenses."

Petitioner produced no convincing substantiation for any of these expenses, and many are suspect on their face. He did not produce a contemporaneous log of his automobile expenses but only a table created during the IRS audit, showing 28,433 miles of alleged business travel. Many entries on this chart are vague, e.g., "Second Job," "Yao Bi client," and "Cont Ed classes." He had no documentation to establish what percentage (if any) of his cell phone, computer, Internet, text messaging, or email expenses was business related. He offered no plausible explanation of how his alleged real estate activity required the expenditure of $3,552 for "tools." He did not have a staff, and he offered no plausible explanation of his claimed deductions for expenses of "staff meetings" and "payroll processing." Nor did he explain what the claimed expense of $850 for "personal marketing" entailed.

**[\*6]**  On October 22, 2012, the IRS sent petitioners a notice of deficiency that disallowed all of the deductions claimed on their Schedule C for 2009.  Petitioners timely petitioned this Court for redetermination.

OPINION

## I.  Burden of Proof

The Commissioner's determinations in a notice of deficiency are generally presumed correct, and the taxpayer bears the burden of proving those determinations erroneous.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  The taxpayer bears the burden of proving his entitlement to deductions allowed by the Code and of substantiating the amounts of claimed deductions.  INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); sec. 1.6001-1(a), Income Tax Regs.  Petitioner does not contend, and the evidence does not establish, that the burden of proof shifts to respondent under section 7491(a) as to any issue of fact.

## II.  Schedule C Deductions

### A.  "Trade or Business"

The first question is whether petitioner's real estate activity during 2009 amounted to a "trade or business" engaged in for profit.  Section 162(a) allows as a deduction "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business."  To be entitled to deductions

**[*7]** under this section, the taxpayer must show that his expenses were incurred in an activity conducted with continuity, regularity, and the purpose of making a profit. Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987). The taxpayer must establish that he "engaged in the activity with 'the predominant, primary or principal objective' of realizing an economic profit independent of tax savings." Giles v. Commissioner, T.C. Memo. 2006-15, 91 T.C.M. (CCH) 684, 688 (quoting Wolf v. Commissioner, 4 F.3d 709, 713 (9th Cir. 1993), aff'g T.C. Memo. 1991-212); see Hulter v. Commissioner, 91 T.C. 371, 392 (1988). In assessing the taxpayer's profit motive, we accord greater weight to objective facts than to subjective statements of intent. Keanini v. Commissioner, 94 T.C. 41, 46 (1990); sec. 1.183-2(a), Income Tax Regs.; see Indep. Elec. Supply, Inc. v. Commissioner, 781 F.2d 724, 726 (9th Cir. 1986), aff'g Lahr v. Commissioner, T.C. Memo. 1984-472.

The regulations set forth a nonexclusive list of nine factors relevant in ascertaining whether a taxpayer conducts an activity with the intent to earn a profit. The factors listed are: (1) the manner in which the taxpayer conducts the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort spent by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in car-

[*8] rying on other similar or dissimilar activities; (6) the taxpayer's history of income or loss with respect to the activity; (7) the amount of occasional profits, if any; (8) the financial status of the taxpayer; and (9) elements of personal pleasure or recreation. Sec. 1.183-2(b), Income Tax Regs.

No factor or group of factors is controlling, nor is it necessary that a majority of factors point to one outcome. See Keating v. Commissioner, 544 F.3d 900, 904 (8th Cir. 2008), aff'g T.C. Memo. 2007-309; Engdahl v. Commissioner, 72 T.C. 659, 666 (1979); sec. 1.183-2(b), Income Tax Regs. Certain factors may be accorded more weight in a particular case because they have greater salience or persuasive value as applied to its facts. See Vitale v. Commissioner, T.C. Memo. 1999-131, 77 T.C.M. (CCH) 1869, 1847, aff'd without published opinion, 217 F.3d 843 (4th Cir. 2000); Green v. Commissioner, T.C. Memo. 1989-436, 57 T.C.M. (CCH) 1333, 1343 (noting that all nine factors do not necessarily apply in every case).

We regard several of the regulatory factors as neutral in this case, and none weighs meaningfully in petitioner's favor. For the following reasons, we conclude that petitioner did not engage in his real estate activity during 2009 with the primary and genuine purpose of making a profit.

[*9]   (1)  Petitioner did not conduct this activity in a businesslike manner.  He kept no business books or records and had no business bank account.  He had no business plan and made no changes to his modus operandi in an effort to generate commissions.  He offered no contemporaneous evidence of his business engagements.  His chart showing 28,433 miles of business travel during 2009 is completely implausible as are many of the business expenses that he reported.  His testimony on all these points was vague and unpersuasive.  See Bradbury v. Commissioner, T.C. Memo. 1996-182, 71 T.C.M. (CCH) 2775, 2777-2778 (noting that taxpayer failed to supply relevant evidence of business activity or proof of business bank accounts); sec. 1.183-2(b)(1), Income Tax Regs.

(2)  Petitioner produced no convincing evidence that he developed expertise in, or devoted meaningful time or effort to, his real estate activity.  He worked one or two regular jobs and testified that he "did real estate on the side."  He secured only one real estate listing between 2007 and 2009; that was for a neighbor and presumably required little effort.  He produced no evidence of involvement in any other real estate transactions during these three years.  Although he testified that he took continuing education classes, he demonstrated no serious effort to advance his career as a real estate professional.  His testimony that he devoted 30 hours per week to his real estate activity was not credible.  See Taylor v. Commissioner,

[*10] T.C. Memo. 1998-351, 76 T.C.M. (CCH) 588, 591 (finding that taxpayer did not use his expertise in the endeavor at issue even though he was a licensed real estate sales agent); Bradbury, 71 T.C.M. (CCH) at 2778 (noting lack of credible evidence that taxpayer devoted consistent time and effort to brokerage activity); sec. 1.183-2(b)(2) and (3), Income Tax Regs.

(3) Petitioner has never earned a profit from his real estate activity. See Golanty v. Commissioner, 72 T.C. 411, 427 (1979) (noting that a series of substantial losses suggests the lack of a profit motive), aff'd without published opinion, 647 F.2d 170 (9th Cir. 1981); sec. 1.183-2(b)(6), Income Tax Regs. Petitioner earned one real estate commission in 2007 and earned no income from his real estate activity in 2008 or 2009. The expenses he reported during these three years, totaling $107,396, are vastly out of proportion to the income he earned. The $30,062 loss he reported for 2009 was not incurred "during the initial or start-up stage" of his supposed business. Cf. sec. 1.183-2(b)(6), Income Tax Regs. And residential real estate is not a "highly speculative venture" where losses can be justified by an expectation of large profits. Cf. id. subpara. (7). Petitioner's reported losses were continuous and substantial for a person in his economic position. This strongly suggests that he did not engage in this activity to make a profit.

**[*11]** (4) Petitioner had a full-time job with Verizon during 2007, 2008, and most of 2009.  His annual salary averaged about $60,000.  Yet by reporting losses from his real estate activity of $24,450, $43,427, and $30,062, respectively, he attempted to reduce his regular income tax liability for each year to zero.[4]  This strategy enabled him to report overpayments of $11,108, $13,205, and $8,710, respectively, and claim refunds of virtually all the income tax withheld from his wages.  Although petitioner's salary was fairly modest, "the losses from * * * [his real estate] activity generate[d] substantial tax benefits."  Id. subpara. (8).  We find that petitioner engaged in his real estate activity not to earn an economic profit but as a vehicle for offsetting against his salary income nondeductible "personal, living, or family expenses."  See sec. 262(a).

Overall, we find and hold that petitioner did not incur the expenses reported on his Schedule C in an activity conducted with continuity, regularity, or for the purpose of making a profit.  Under section 183(a) and (b), therefore, the deductions attributable to his real estate activity are limited to the gross income he

---

[4]Petitioners' claimed refund for 2009 was reduced by an "additional tax" of $1,984 on early withdrawal from a retirement plan.  See sec. 72(t).

**[\*12]** derived therefrom.  Because he derived no gross income from that activity in 2009, he is entitled to no deductions.[5]

    B.    <u>Substantiation of Expenses</u>

Even if petitioner were found to have engaged in a "trade or business" for profit during 2009, we would find that he failed to substantiate the expenses underlying his claimed deductions.  The burden of substantiating expenses rests on the taxpayer.  Sec. 6001; Rule 142(a); <u>Hradesky v. Commissioner</u>, 65 T.C. 87, 89 (1975), <u>aff'd per curiam</u>, 540 F.2d 821 (5th Cir. 1976).  Certain of petitioner's alleged expenses, including his automobile and travel-related expenses for 2009, totaling $16,532, are subject to the strict substantiation requirements of section 274(d).  <u>See</u> <u>Sanford v. Commissioner</u>, 50 T.C. 823, 827 (1968), <u>aff'd</u>, 412 F.2d 201 (2d Cir. 1969); <u>Lysford v. Commissioner</u>, T.C. Memo. 2012-41; sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).  Petitioner wholly failed to meet those requirements.  As for his other alleged expenses, many were completely implausible on their face, and he produced no invoices, bank statements, credit card statements, or other credible documentation to substantiate any of them.  We accordingly find that he would not be entitled to

---

[5]None of petitioner's alleged expenses appear to be otherwise allowable as itemized deductions.

**[*13]** the claimed deductions even if he had engaged in a profit-seeking real estate

business during 2009, which he did not do.

To reflect the foregoing,

<u>An appropriate decision will be</u>

<u>entered</u>.