HAROLD W. GUENTHER and MARGARET E. GUENTHER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Guenther v. Commissioner
Docket No. 1792-73.
United States Tax Court
T.C. Memo 1975-194; 1975 Tax Ct. Memo LEXIS 181; 34 T.C.M. (CCH) 834; T.C.M. (RIA) 750194; June 18, 1975, Filed James D. O'Connell, for the petitioners. Peter M. Ritteman, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies in petitioners' income tax for the calendar years 1967 and 1968 in the amounts of $3,041.44 and $1,166.90, respectively. Some of the issues raised by the pleadings have been conceded by respondent, leaving for our decision the following: (1) Whether petitioners are entitled to a capital loss carryover to 1967 in the amount of $885.47; (2) whether an amount of $1,049.41 expended by petitioners in 1967 to install new and larger pipe in a dam is properly deductible as a repair or is a capital expense subject to depreciation; (3) whether $483.12 spent by petitioners for machine hire and labor in 1967 to have oak trees *182 felled and cut into slats to use in repair of a "loafing" shed is properly deductible in 1967 or should be amortized over the years during which the slats were used in making repairs; (4) to what extent are various miscellaneous items lumped over the designation of repairs by petitioners totaling $1,479 in the year 1968 properly deductible, and what portion, if any, of this amount should be capitalized and the expenditure recovered through depreciation; (5) whether petitioners are entitled to deduct as a capital loss the excess of the amount they paid for replacement property over what they received for 30 acres of their dairy farm which they sold to Detroit Edison Company under threat of condemnation; (6) whether petitioners are entitled to deduct the full premium cost of a 3-year comprehensive farm insurance policy covering the period December 20, 1968, through December 20, 1971, in the year 1968 or are required to amortize the premium over the 3 years 1969 through 1971; and (7) whether petitioners are entitled to deduct in 1967 and in 1968 any amount of insurance in excess of the deduction allowed by respondent as automobile insurance on automobiles used in the operation *183 of their farm. FINDINGS OF FACT Harold W. Guenther and Margaret E. Guenther (hereinafter petitioners), husband and wife, who resided in Dexter, Michigan at the time their petition in this case was filed, filed joint Federal income tax returns for the calendar years 1967 and 1968 with the Internal Revenue Service at Cincinnati, Ohio. Petitioners purchased a 330-acre farm in 1950 as a single unit for a total consideration of $28,500. Petitioners' home was not on this farm but was located nearby. From 1950 through March 1, 1966, petitioners operated the farm as a dairy farm as a sole proprietorship. On March 1, 1966, petitioners entered into a working farm partnership arrangement with Ronald Spiegelberg in connection with the dairy farm operation. Petitioners had prior to that date hired employees to assist in the operation of their dairy farm. By March 1, 1966, they were unable to hire the employees necessary to operate the dairy farm as a sole proprietorship and for this reason entered into the partnership arrangement. The agreement was that the petitioners would receive 40 percent of the dairy farm profits and would retain complete ownership of the real property, buildings and *184 equipment and a one-half interest in all livestock. On January 26, 1967, petitioners, under threat of condemnation, sold 30 acres of their dairy farmland to Detroit Edison Company for a total consideration of $14,250. These 30 acres of land were the poorest 30 acres of land on the property. Petitioners were the last persons in their general area to come to an agreement with Detroit Edison as to a price for their property and only came to this agreement after they were threatened with a condemnation proceeding. Petitioners reached agreement with Detroit Edison about the first of January 1967 and immediately after reaching this agreement made arrangements to purchase some land in Florida. Between January 4, 1967, and December 13, 1967, petitioners paid a total of $15,982.93 to Gulf America Land Corporation for the investment property they purchased and the total agreed price for the land to be paid was $18,000. In 1967 petitioners paid Lomar Pipe Company $1,024.40 for a drain pipe which was used to conduct water from a lake behind petitioners' residence to a cattle pasture on their farm. The drain pipe had originally been placed in the lake around 1961 and partly because of its *185 deterioration and partly because of the cattle tromping down the dam when it was wet, the original pipe had become practically unusable in 1967. The new drain pipe was substantially larger and heavier than the pipe which had previously been placed in the dam. Petitioners estimated that the new drain pipe would last approximately 10 years. In 1967 petitioners hired Basil Reilly to cut certain oak trees on their farm and saw the trees into slats of the proper size to be used to replace broken slats in the "loafing" shed floor. Mr. Reilly supplied the machine and labor to do the cutting. He began the cutting about July 1 and it was completed approximately November 1, 1967. Petitioners had commenced building the "loafing" shed in 1965 and had begun to use the shed in 1966. The slats in the shed floor were over a pit and were approximately 1-3/4ths inches apart so that the cows could stand on the slats without slipping through. Because of this type of construction the slats were constantly having to be replaced. Petitioners paid Mr. Reilly $483.12 in 1967 for felling the trees and cutting them into slats for the "loafing" shed. In 1968 petitioners made payments of $1,479 for various *186 miscellaneous items which included small items of building materials, posts, tractor repairs, paint, belts and fans, soldering, salt pellets, grass seed, and various automobile repairs, as well as materials with which a new septic tank was built. Of this amount, $312 was for the installation of the new septic tank. One item of $115 was paid for a John Deere dump cart. Of this amount $95 was discharged by the trade-in of one used W. C. Allis Chalmers tractor with a net cash payment of $20. Also included in this item was a total amount of $150.34 for repairs on an Oldsmobile automobile which was primarily used by petitioners as a family car. Petitioners owned a 1968 Oldsmobile which they purchased in 1967 to replace a 1965 Ford which they used primarily as a family car although occasionally it was used in connection with the operation of the farm. They owned a 1966 Falcon which was used primarily in connection with the operation of the farm but occasionally for personal reasons, and a 1962 pickup truck and a 1956 station wagon which were used exclusively for farm work. Petitioners paid insurance charges on all of the automobiles. On December 20, 1968, petitioners paid by check to *187 Farm Bureau Mutual Insurance Company of Michigan $1,652.72 as the premium on general farm insurance for the period December 20, 1968, through December 20, 1971. Petitioners on their Federal income tax return for the calendar year 1967 claimed a capital loss carryover from 1966 in the amount of $885.47 and claimed a capital loss with respect to the acreage sale to Detroit Edison computed by subtracting from $18,000 which they stated to be the cost of replacement property, the $14,250, which they received from Detroit Edison for the 30 acres, resulting in a total capital loss of $3,750. This claimed capital loss was offset by a capital gain on another acreage sale which is not here in issue since respondent in his notice of deficiency recomputed the basis of the acreage sold, resulting in a capital loss of $648.95, which adjustment petitioners have accepted. Respondent disallowed the claimed capital loss on the sale of the 30 acres to Detroit Edison and recomputed the transaction as resulting in a $14,129.05 capital gain. However, respondent has now conceded that the transaction resulted in no capital gain since the sale constituted a sale under threat of condemnation followed by *188 a qualified reinvestment of the proceeds within one year. Respondent also disallowed the claimed $885.47 capital loss carryover to 1967. Also on their returns for 1967 and 1968 petitioners reported various items of farm expense, a portion of which was disallowed by respondent. The following schedule shows the items of deduction claimed as farm expense for each of these years, the amount disallowed by respondent in his notice of deficiency, and the amount of these items allowed as farm expense: 1967
Claimed
Disallowed
Allowed
Repairs, Maintenance
$1,764.37
[1] $1,049.41
$714.96
Machine Hire
[2] 383.12
383.12
0
Insurance
1,094.52
502.92
591.60
1968
Repairs, Maintenance
$2,030.71
$1,479.00
$551.71
Insurance
[3] 2,116.21
[3] 2,017.46
98.75
Respondent, in his notice of deficiency, explained these disallowances *189 on the basis that it had not been established that such amounts were ordinary and necessary business expenses or were expended for the purposes designated. In the notice of deficiency respondent also disallowed a portion of the depreciation claimed by petitioners but has now conceded that the entire deduction for depreciation as claimed on petitioners' returns is allowable. Also certain amounts of itemized deductions were disallowed in each year, but either petitioners did not contest this disallowance or respondent has conceded that the amounts were properly allowable. OPINION The issues left here for our decision are purely factual. Petitioners have offered no evidence whatsoever to support their claim for an $885.47 capital loss carryover and for this reason we sustain respondent's disallowance of this item. From the evidence which consisted primarily of petitioner's own testimony with supporting documents showing the cost of the drain pipe, we conclude that the drain pipe, with a useful life of 10 years, was a capital expense subject to depreciation and not a deductible repair item. Apparently the drain pipe originally put in, which was smaller and less heavy than the *190 new drain pipe, had lasted practically its entire useful life when, because of cattle walking across the dam after a rainfall, it required immediate replacement. However, the replacement not only constituted the replacement of a capital item which had served most of its useful life but was an improvement on the pipe it replaced. Under these circumstances clearly the new pipe is a capital expenditure and not a deductible repair. Mt. Morris Drive-In Theatre Co.,25 T.C. 272 (1955), affirmed per curiam 238 F.2d 85 (6th Cir. 1956); Red Star Yeast & Products Co.,25 T.C. 321, 350 (1955). Respondent in his brief has conceded that if he is sustained in his disallowance of the claimed deduction for drain pipe, petitioners are entitled to increase their depreciation as claimed on their return by an amount computed by depreciating the drain pipe on the basis of 10 years. Respondent now concedes that petitioners have established that they expended $483.12 in the year 1967 to have trees cut and made into slats for repairs to the "loafing" shed. Respondent's position is that the slats that were acquired as a result of this expenditure were sufficient *191 to last for at least 3 years and therefore the cost should be amortized one-third to 1967 and one-third to each of the 2 succeeding years. The record is far from clear as to how long the slats acquired in 1967 would last but is reasonably clear that they were not all used in the year 1967. Although there is no testimony or evidence other than the return itself as to the method on which petitioners reported their farm income, it is obvious from the record as a whole that it was on the cash basis. On this method ordinarily petitioners would be entitled to deduct an expenditure for supplies in the year when the expenditure was made even though some of the supplies were left over to be used in later years. In our view the amounts spent by petitioners to have their own trees cut into slats should be treated no differently than had the slats been purchased. The record is completely clear that the entire cost of obtaining the slats was paid in 1967. Respondent has cited no cases to support his position. Petitioners in their brief cited no authority for any of the contentions they make. The only cases we have found dealing with disallowance of deductions to a cash-basis farmer for payments *192 in the year in which the payments were made are those cases dealing with prepayments for feed. See, e.g., John Ernst,32 T.C. 181 (1959); and Tim W. Lillie,45 T.C. 54 (1965), affd. per curiam 370 F.2d 562 (9th Cir. 1966). Those cases turn to an appreciable extent on whether the payments were in effect deposits which would be refundable if the feed was not in fact delivered and used or whether there was a firm contract so that the taxpayer would receive no refund under any circumstances. Where the payment was absolute so that the feed in effect was in the taxpayer's inventory, we have allowed the deduction. See John Ernst,supra.But where the payment was not required to be made in advance, was not for the purpose of securing preferential treatment, and was such that refunds could be received were the feed not to be actually ordered for consumption in farm operation during the following years, we have disallowed the deduction in the year of payment and allocated the payment to the years in which the feed was actually delivered and used. *193 Tim W. Lillie,supra.Using the principle enunciated in these cases as a guide, we conclude that the petitioners are entitled to deduct in 1967 the entire $483.12 paid to obtain a supply of slats for repairs to the "loafing" shed. The petitioners had fully paid for and owned the slats. Except for the method used by them in reporting their farm income, the cost or value of the unused slats would be includable in their 1967 closing inventory. Since petitioners did not use inventories in reporting their farm income, the amount is a deductible expense in the year when paid. In support of their claimed deduction for repairs petitioners introduced a stack of receipts for cash payment of bills, statement with the payment checks attached where payment was made by check and copies of invoices which totaled $1,479, which respondent disallowed. Many of these items are not repair items at all but are actual purchases for operation of the farm, such as salt pellets and grass seed. We have gone through these invoices in some detail. In our view obviously the cost of the septic tank was a capital expenditure since the septic tank would be expected to last for a number of years. *194 As best as we can determine from the invoices submitted, the cost of the installation of this septic tank was $312 and we sustain respondent's disallowance of this item and leave it to the parties under Rule 155 to determine the proper depreciation. Equally it is obvious that the dump cart was a capital expenditure. However, apparently only $20 of this item has found its way into the claimed deductions for repairs and we will leave the handling of this item to the parties under Rule 155. Finally, of the total amount of invoices the amount of $150.34 is apparently for repairs to and servicing of the Oldsmobile which the testimony shows was the family car for personal use and not one of the business automobiles. For that reason, in our view this amount of $150.34 is not a properly deductible expenditure, nor is it an item to be capitalized. Respondent has now conceded that petitioners are not required to report any gain with respect to the sale of the 30 acres to Detroit Edison. Section 1033, I.R.C. 1954, [1] provides that if property, as a result of a threat or imminence of condemnation, is involuntarily converted into property similar or related in service *195 or use to the property so converted, no gain shall be recognized. The clear import of the section of section 1033 dealing with the nonrecognition of gain and the basis of property acquired through involuntary conversion is that it is not the intent of the statute that any loss result from such a transaction even though the replacement property may be purchased for an amount in excess of the amount received for the involuntarily converted property. It is not clear that petitioners are even still contending that they are entitled to any loss but if they are, we hold against this contention. It has long been settled that prepaid insurance is not deductible in the year of payment by a cash-basis taxpayer but must be amortized *196 over the years that the policy covers. Commissioner v. Boylston Market Ass'n.,131 F. 2d 966 (1st Cir. 1942), affirming a Memorandum Opinion of this Court. We therefore sustain respondent in his disallowance of the insurance payment of $1,652.72 in the year 1968 except to the extent of the portion thereof allocable to the 10 remaining days in the year 1968. Petitioners offered no specific evidence as to the amount of automobile insurance paid by them in 1967 and what portion was allocable to their business truck and cars. Since respondent in his notice of deficiency allowed petitioners an insurance deduction in the year 1967 in the amount of $502.92, there is nothing in this record to indicate that the allowance does not include any portion of petitioners' automobile insurance properly allocable to the farm automobiles and truck. Petitioners did put in the bills for automobile insurance in 1968 and the checks in payment of those bills, and apparently the $98.75 which was allowed by respondent as a deductible insurance premium is the only amount clearly shown to be for business purposes. This amount is an amount paid by a check for $98.75 to the Farm Bureau Mutual *197 Insurance Company on March 12, 1968, which petitioner testified was insurance on the pickup truck. However, in going through the other insurance receipts for the year 1968 it appears that there was additional insurance on the Ford pickup paid later in 1968 of $31.39 and insurance on the Falcon which was used almost exclusively for farm purposes of $47.66, and insurance on the 1956 Ford stationwagon which was used exclusively for farm purposes of $25.70. We therefore, on the basis of the preponderance of the evidence, hold that in addition to the $98.75 allowed by respondent, petitioners are entitled to deduct as a farm business expense the total of the three insurance items above set forth, or $104.75. It may be that some other items of insurance should be allocated to the farm vehicles. However, there is nothing that was put in this record from which we were able to compute any further allowance, if petitioners actually did have any further insurance in 1968 on farm vehicles. Decision will be entered under Rule 155.
Footnotes
1. This is the drain pipe installed in the lake. ↩
2. This is the payment to Basil Reilly except for $100 which was an additional claim by petitioners at the trial without objection by respondent. ↩
3. This includes the $1,652.72 paid on December 20, 1968, as a premium for 3 years of general farm insurance.↩
1. All references are to the Internal Revenue Code of 1954. SEC. 1033. INVOLUNTARY CONVERSIONS. (a) General Rule.--If property (as a result of its destruction in whole or in part, theft, seizure, or requisition or condempation or threat or imminence thereof) is compulsorily or involuntarily converted-- (1) Conversion into similar property.--Into property similar or related in service or use to the property so converted, no gain shall be recognized.↩