T.C. Memo. 2015-1

UNITED STATES TAX COURT

TULANE MEREDITH PETERSON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 10597-12, 6188-13.          Filed January 5, 2015.

Tulane Meredith Peterson, pro se.

<u>Vivian Bodey</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LAUBER, <u>Judge</u>:  In these consolidated cases the Internal Revenue Service (IRS or respondent) determined the following deficiencies, penalties, and additions to tax with respect to petitioner's Federal income tax for 2006 and 2007:

[*2]

| Year | Deficiency | Penalty sec. 6662(a) | Addition to tax sec. 6651(a)(1) |
|------|------------|----------------------|--------------------------------|
| 2006 | $135,114 | $27,023 | $33,759 |
| 2007 | 23,614 | 4,723 | 3,946 |

After concessions,[1] the issues for decision are: (1) whether petitioner is entitled to deduct airplane-related and home office expenses reported on Schedule C, Profit or Loss From Business, in amounts exceeding those respondent allowed; (2) whether petitioner is liable for accuracy-related penalties under section 6662(a);[2] and (3) whether petitioner is liable for an addition to tax under section 6651(a)(1) for late filing of his 2006 return. With minor exceptions, we resolve all issues in favor of respondent.

---

[1]The parties agree that: (1) petitioner's 2006 medical expense reported on Schedule A, Itemized Deductions, should be increased by $261, as set forth in the notice of deficiency; (2) petitioner's 2006 Schedule C rent expense should be increased by $15, as set forth in the notice of deficiency; (3) petitioner's 2006 Schedule C other expense should be increased by $2,812, as set forth in the notice of deficiency; (4) petitioner's 2006 Schedule C utilities expense should not be adjusted; (5) petitioner's 2006 Schedule C gross receipts should be increased by $36,567, rather than by $308,763 as set forth in the notice of deficiency; and (6) petitioner's 2007 Schedule C gross receipts should not be adjusted. Petitioner also concedes liability for the 2007 addition to tax under sec. 6651(a)(1).

[2]Unless otherwise indicated, all statutory references are to the Internal Revenue Code (Code) as in effect for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

**[*3]**                     FINDINGS OF FACT

Certain facts and exhibits have been stipulated and are incorporated by this reference.  Petitioner, who resided in California when he filed his petitions, is an attorney who became licensed to practice law in 1997.  Petitioner has been an amateur pilot for at least 40 years, and he immensely enjoys flying.  These cases involve the intersection between his legal and his aeronautical activities.

Petitioner's Activities

Petitioner, a solo practitioner, does business through the Law Office of Tulane M. Peterson.  He engages in the general practice of law with an emphasis on personal injury cases.  During the tax years at issue the bulk of his work focused on three personal injury cases--the McMaster, Hodge, and Howell cases--all of which involved car accidents.

In June 2005 petitioner purchased a 2005 Cessna Turbo Skylane for $332,000.  He made a downpayment of $10,000 and during 2006 and 2007 made monthly payments of $1,400 to Cessna Financial Corp.  He keeps his airplane in a hangar at the El Monte Airport, a 15-minute drive from his home.  To help offset the cost of owning the plane, petitioner decided to forgo renting commercial office space and shifted his law practice to a home office.

**[\*4]**    Petitioner also decided to become "instrument rated" as a pilot, which would enable him to fly in more diverse weather conditions.  To become "instrument rated," petitioner had to take a series of classes on the ground, which he completed during 2005 and 2006.  He was also required to log a certain number of hours performing specified tasks in his airplane; fly the plane a certain number of times with a certified person observing him; and pass ground-level and airborne tests.  To maintain his instrument rating, petitioner also had to meet ongoing "currency requirements."  This required that he fly his plane at least once every 28 days; perform certain tasks while flying; and record his completion of these tasks in a flight log kept on the plane.

Petitioner recorded all of his 2006 and 2007 flights in the airplane flight log. He subsequently transcribed the handwritten flight log notes into an annual summary chart.  The charts show each flight he took, in chronological order.  The charts record the airport from which he departed, the airports he visited, the time of day or night when the flight occurred, and tasks relevant to his instrument rating and currency requirements.

Petitioner's flight log and transcribed charts categorize each of his flights as a "training flight," a "maintenance flight," or a "business flight."  "Training flights" were made to secure and keep current his instrument rating.  "Maintenance

[*5] flights" were made before long flights or after ground maintenance was performed in order to verify that the Cessna was in good working order. Petitioner did not categorize any flights as personal although the evidence revealed that many were of this character.

Petitioner logged 174 hours of flight time in 2006. If we use the airplane-related expenses (excluding depreciation) that petitioner claimed, it cost him roughly $236 per flight hour to operate his airplane in 2006. Petitioner logged 95 hours of flight time in 2007. If we use the airplane-related expenses (excluding depreciation) that petitioner claimed, it cost him roughly $433 per flight hour to operate his airplane in 2007.

Many of petitioner's flights were to airports quite close to his home. These included numerous flights to Brackett Field (roughly 20 miles distant), Chino (30 miles), Long Beach (30 miles), Ontario (30 miles), Santa Monica (35 miles), Van Nuys (35 miles), Corona (40 miles), Riverside (45 miles), John Wayne International Airport (45 miles), and San Bernardino (50 miles). Between 60% and 65% of petitioner's flights during 2006 and 2007 were to airports within 100 miles of his home. He testified that it made business sense for him to fly, rather than drive, to these destinations because flying enabled him to avoid Los Angeles traffic.

**[*6]**   At trial petitioner contended that 100% of his flights, including those he had categorized as "training" and "maintenance" flights, entailed business expenses of his law practice.  A relatively small percentage of these flights involved travel to court appearances, witness interviews, or depositions in litigation in which he was actually engaged.  The remainder of his alleged "business flights" involved travel for personal or family reasons; travel to conferences; travel for supposed "client development" or "marketing"; and travel related to pilot training, airplane insurance, airplane fuel costs, pilot safety, and other aviation-related matters.  Examples of petitioner's alleged "business flights" included the following:

   • 17 trips to Big Bear, a mountain resort community 90 miles from his home.  The asserted business purposes of these trips included purchasing fuel; engaging in "business development"; engaging in "informal law office marketing"; investigating "a possible office location"; attending FAA pilot safety meetings; entertaining business colleagues; and practicing high-altitude landings.

   • Flights to and from his parents' home in Bismarck, North Dakota, with stops at Rawlings, Wyoming, and Cedar City, Utah.  Petitioner testified that his parents were "clients" who had retained him to provide estate planning advice and to resolve a mold complaint.  Petitioner introduced no evidence that he charged or intended to charge his parents legal fees or that they paid or intended to pay him

**[*7]** legal fees.  Petitioner's children accompanied him on his second flight to Bismarck, and his parents accompanied him on the return flight to El Monte.

• Several flights on which petitioner was accompanied by his son, who took aerial photographs allegedly relevant to personal injury cases on which petitioner was working.  Petitioner offered no evidence, apart from his testimony which lacked credibility, that these photographs were necessary for or used in such litigation.

• Flights to Palm Springs, a resort community in California, to investigate a "possible executive hangar investment"; to Napa, California, to engage in "marketing" and attend an aviation insurance meeting; and to Santa Monica, California, to "return a defective portable bike purchased for use with aircraft."

• Flights to French Valley and John Wayne International Airport for pilot safety meetings; to Van Nuys, California, for an FAA training meeting; and to Riverside, California, for an FAA medical exam.

• Flights to Las Vegas, Nevada, and San Antonio, Texas, for alleged meetings of the Propane Gas Defense Association.  The San Antonio trip included a detour to Arlington, Texas, which was off the normal flight path and for which petitioner provided no explanation.  Petitioner offered no convincing evidence that

[*8] he actually attended these conferences or that he performed any legal work for, or received any client referrals from, the Propane Gas Defense Association.

• Flights to Sacramento, California, to serve as a volunteer in a YMCA "Youth in Government" program, and to Fresno, California, to attend a funeral. Petitioner testified that the business purpose of these trips included "marketing" and "estate/trust matters." The Court found this testimony to lack credibility.

• Flights to various destinations for meetings of the Five County Pilots Association to discuss complaints about the price of aviation fuel in the Los Angeles area. As an aircraft owner, petitioner had an obvious personal interest in this issue. Petitioner testified that he was seeking to expand his practice to include "aviation law," but the Court found this testimony to lack credibility.

Petitioner offered no evidence that any of these trips, or numerous other trips like them, involved an actual client representation or generated receipt of legal fees. He did not transport clients on any of these flights, and many of his alleged "marketing" and "client development" trips involved travel to resort destinations. The Court found his testimony as to the alleged business purpose of these trips to lack credibility.

During 2007 petitioner made two modifications to his residence. He replaced the main sewer line to his home and constructed a block wall around the

[*9] perimeter of his backyard. He testified that the main sewer line needed to be replaced to provide a working bathroom to his home office and that the backyard fence, which he termed "dilapidated," needed to be replaced to provide the privacy his law office required. The aggregate cost of these home modifications was $32,050. Petitioner's contemporaneous documentation described both modifications as "replacements" of the preexisting property.

Petitioner's Tax Reporting

Petitioner requested and received a six-month extension of time to file his 2006 Federal income tax return. However, he did not file that return until April 22, 2009, more than 18 months after the extended due date. He testified that his filing delay was attributable to a backlog of work, familial duties, and administrative duties leading up to and following his father's death in December 2007.

On his 2006 Schedule C petitioner reported as expenses of his law practice depreciation and section 179 expense of $74,368 relating to his airplane and other airplane-related expenses of $41,252. On audit the examining agent determined that petitioner had substantiated $14,277 of airplane-related expenses (for fuel, hangar rent, and insurance). Among the expenses deemed unsubstantiated were $5,192 of reported "repair" costs, which were actually costs of flight training incident to petitioner's becoming instrument rated. At the conclusion of the audit

[*10] the examining agent disallowed 100% of the depreciation expense, section 179 expense, and airplane-related expenses (including those deemed substantiated) on the ground that none of these costs were ordinary and necessary expenses of petitioner's trade or business.

Petitioner requested and received a six-month extension of time to file his 2007 Federal income tax return. He did not file that return until April 19, 2010, more than 18 months after the extended due date. He offered no excuse for this late filing.

On his 2007 Schedule C petitioner reported as expenses of his law practice depreciation and section 179 expense of $81,912 relating to his airplane and other airplane-related expenses of $41,100. His 2007 return was audited by a different examining agent. She determined that petitioner had substantiated all of the reported expenses. On the basis of his flight logs and supporting documentation she determined that 27% of his flight hours were directly related to his law practice because they involved flights to court appearances, depositions, or witness interviews in litigation in which he was engaged. She accordingly allowed a deduction of $11,097 for airplane-related expenses (0.27 × $41,100 = $11,097).

Because petitioner's airplane constituted "listed property" that was not predominantly used in his trade or business, the examining agent determined that he

[*11] was not eligible to make an election under section 179. She accordingly recomputed depreciation on the straight-line method and allowed a deduction equal to 27% of that amount, or $10,460, employing the "business percentage" she derived from his flight logs and supporting documents.

On his 2007 Schedule C petitioner claimed a home office deduction attributable to his law practice. In computing this deduction petitioner characterized as "repairs and maintenance" on his home the $32,050 cost of replacing his sewer line and back fence. The examining agent determined that these home modifications were capital improvements and accordingly disallowed a ratable portion of the claimed home office deduction.

Tax Court Proceedings

The IRS sent petitioner separate notices of deficiency for 2006 and 2007 determining the adjustments described above. Petitioner timely petitioned this Court on April 30, 2012, and March 15, 2013, respectively. In his answer to the petition for 2007 respondent did not assert an increased deficiency. On January 22, 2014, the Court granted the parties' joint motion to consolidate the cases for trial, briefing, and opinion.

Before trial the parties filed a stipulation of settled issues in which petitioner conceded (among other things) his liability for the addition to tax under

[*12] section 6651(a)(1) for late filing of his 2006 tax return. At the outset of trial petitioner asked to be relieved of this stipulation, asserting that it resulted from "some confusion" on his part. The Court took this request under advisement.

During trial respondent conceded that petitioner had substantiated the payment in 2006 of $15,486 in interest to Cessna Financial Corp. The examining agent who audited petitioner's 2007 return testified at trial. She stated that if the methodology she had employed to determine the business-related percentage of petitioner's 2007 flight hours were applied to his 2006 flights, she would identify 18% of his 2006 flight hours as business related. In his posttrial brief respondent conceded that for 2007 petitioner should be allowed deductions of $11,097 for airplane-related expenses and $10,460 for airplane-related depreciation.

## OPINION

The Commissioner's determinations in a notice of deficiency are generally presumed correct, and the taxpayer bears the burden of proving those determinations erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). The taxpayer bears the burden of proving his entitlement to deductions allowed by the Code and of substantiating the amounts of claimed deductions. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); sec. 1.6001-1(a), Income Tax Regs. Petitioner does not contend, and the evidence does not establish, that the burden of

[*13] proof shifts to respondent under section 7491(a) as to any issue of fact. Respondent bears the burden of production, and petitioner bears the burden of proof, with respect to the addition to tax under section 6651 and any accuracy-related penalty under section 6662. See sec. 7491(c).

A.     Schedule C Expenses

Section 162(a) allows a taxpayer to deduct "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." "Ordinary" means that which is "normal, usual, or customary" in the type of business in which the taxpayer is engaged. Deputy v. du Pont, 308 U.S. 488, 495 (1940). A necessary expense is one that is "appropriate and helpful" to the taxpayer's business. Welch v. Helvering, 290 U.S. at 113. To the extent that an expense is unreasonable, it is not necessary. In such a case, only the portion which was reasonable is deductible under section 162. United States v. Haskel Eng'g & Supply Co., 380 F.2d 786, 788-789 (9th Cir. 1967).

The taxpayer bears the burden of proving that claimed expenses are ordinary and necessary and also bears the burden of substantiating claimed deductions. Sec. 6001; Rule 142(a); Hradesky v. Commissioner, 65 T.C. 87, 89 (1975), aff'd per curiam, 540 F.2d 821 (5th Cir. 1976). In some circumstances, this Court may estimate the amount of a deductible expense if a taxpayer furnishes documentation

**[*14]** establishing its existence but is unable to substantiate the precise amount. See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).

Section 274(d) supersedes the Cohan rule and prevents us from estimating certain kinds of expenses. See Sanford v. Commissioner, 50 T.C. 823, 827 (1968), aff'd, 412 F.2d 201 (2d Cir. 1969). Section 274(d) imposes strict substantiation requirements for expenses relating to travel and "listed property," which includes automobiles and (as relevant here) airplanes. Lysford v. Commissioner, T.C. Memo. 2012-41; sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).

1.   Airplane Expenses

The principal question is whether petitioner is entitled to deduct, as business expenses of his law practice, the airplane-related expenses that he reported on his Schedule C.

a.   Substantiation

To deduct his airplane-related expenses, petitioner must first substantiate the amount of each expense "by adequate records or by sufficient evidence corroborating * * * [his] statement." See sec. 274(d)(4). To meet the "adequate records test," a taxpayer generally must maintain contemporaneous account books

[*15] or similar records as well as documentary evidence, such as invoices or receipts. See sec. 1.274-5T(c)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985).

Petitioner reported $41,252 of airplane-related expenses for 2006 and $41,100 of airplane-related expenses for 2007. In the notices of deficiency respondent determined that petitioner had substantiated $14,277 of the reported expenses for 2006 and all of the claimed expenses for 2007. At trial respondent conceded that petitioner had substantiated $15,486 of additional airplane-related expenses for 2006, namely, interest paid to Cessna Financial Corp. This leaves $11,489 of 2006 expenses, reported by petitioner as "repair" and "other" expenses, that require substantiation.

We find that petitioner has failed to substantiate the claimed additional expenses of $11,489. He offered an Excel spreadsheet, several pages of handwritten notes, adding machine tape "verifying" his math, and three months' worth of bank account statements. Conspicuously absent are receipts or invoices for actual maintenance of or repairs to the aircraft. Petitioner included among his alleged "repair" expenses a donation to Faith Community Church, court fees, parking costs, and receipts with notations for "meals, hotel, [and] transportation." He also included in his alleged "repair" expenses the cost of flight training to

**[\*16]** become "instrument rated," which was clearly personal.[3] On the basis of this evidence we cannot find that petitioner has met, as to the $11,489 of "repair" and "other" expenses reported for 2006, the strict substantiation requirements that section 274 imposes for "listed property."

        b.     "Ordinary and Necessary"

Petitioner must next establish that the airplane-related expenses he has substantiated are "ordinary and necessary" expenses of his law practice. A powerful argument can be advanced that none of these expenses should be regarded as "ordinary and necessary." The cost of owning and operating a private airplane would not appear to be "normal, usual, and customary" for an attorney in solo practice, especially one who makes 60% to 65% of his flights to destinations within 100 miles of his home. Nor would it seem "reasonable," at the cost of $236 to $433 per flight hour, to fly to destinations that can be reached by car in less than an hour.

However, by allowing petitioner to deduct 27% of his airplane-related costs for 2007, respondent has conceded that these costs were "ordinary and necessary" to the extent they were genuinely business related. Although these cases have

---

[3]We discuss infra pp. 20-21 petitioner's contention that his flight training expenses are deductible as "educational expenses."

[*17] been consolidated for trial, briefing, and opinion, each taxable year stands on its own. See United States v. Skelly Oil Co., 394 U.S. 678, 684 (1969). The Commissioner is not required for any given year to allow a tax benefit that he has permitted for a previous or subsequent year. See, e.g., Lerch v. Commissioner, 877 F.2d 624, 627 n.6 (7th Cir. 1989), aff'g T.C. Memo. 1987-295; Pekar v. Commissioner, 113 T.C. 158, 166 (1999). Nevertheless, upon thorough review of the entire record, and in light of the unique circumstances of this situation, we find it appropriate to treat petitioner's airplane-related expenses, for 2006 as well as for 2007, as "ordinary and necessary" to the extent that we determine them to be business related.

        c.     Business Relatedness

Section 162(a) allows a deduction for expenses paid or incurred "in carrying on * * * [the taxpayer's] trade or business." For "listed property," including airplanes, section 274 requires that the taxpayer substantiate, by adequate records or sufficient evidence corroborating his own statement, the amount of each business use as well as the date of the expenditure or use and "[t]he business purpose for * * * [the] expenditure or use." Sec. 1.274-5T(b)(6), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985). The degree of substantiation necessary to establish business purpose depends on the facts and

[*18] circumstances of each case, but contemporaneous documentation is deemed more credible than after-the-fact reconstructions. Sec. 1.274-5T(c)(1), (2)(ii)(B), Temporary Income Tax Regs., 50 Fed. Reg. 46016, 46018 (Nov. 6, 1985). Where the business purpose of a flight has not been established, no deduction is allowed for expenses attributable thereto. Engstrom, Lipscomb & Lack, APC v. Commissioner, T.C. Memo. 2014-221.

We begin with the trips that petitioner in his flight logs classified as "business flights." Respondent has conceded that 27% of petitioner's 2007 flight hours were business related because they involved travel to court appearances, witness interviews, or depositions in litigation in which he was actually engaged. The IRS agent who examined petitioner's 2007 return testified, candidly and to her credit, that she would identify 18% of his 2006 flight hours as business related under this standard. Under these unique circumstances, and on the basis of a thorough review of the record before us, we find it appropriate to hold respondent for 2006 to a concession analogous to that which he has made for 2007. We accordingly find that 18% of petitioner's 2006 flight hours and 27% of his 2007 flight hours should be deemed business related.

We find as a fact that petitioner has failed to demonstrate a "business purpose" for any of the other flights that he classified as "business flights." Sec.

**[*19]** 1.274-5T(b)(6)(iii), Temporary Income Tax Regs., <u>supra</u>. These flights can be grouped into the following main categories: (1) trips on which he visited or was accompanied by family members, engaged in volunteer work, or discharged other personal duties; (2) trips to investigate supposed investment opportunities; (3) trips related to pilot safety, airplane insurance, aircraft fuel, FAA medical exams, and other aviation-related matters; (4) trips to alleged conventions, conferences, and similar events; and (5) trips to engage in supposed "marketing" or "potential client development." Flights in the first three categories were clearly personal, reflecting petitioner's family or personal obligations, personal finances, or love of flying. As to the fourth category, petitioner produced no convincing evidence of actual attendance at any conventions or conferences or any direct connection between such meetings and his law practice. As to the fifth (and largest) category, petitioner produced no documentary evidence and no credible testimony that any of these flights, many of which were to resort destinations, had a bona fide business purpose.

We next consider the trips that petitioner classified as "training flights" and "maintenance flights." Petitioner testified that "training flights" were made to "maintain proficiency," "maintain currency," and "obtain instrument rating." He testified that "maintenance flights" were made before long flights or after ground

[*20] maintenance was performed in order to verify that the Cessna was in good working order. He contends that these flights had a business purpose because they enabled him to fly his airplane as an instrument-rated pilot, which in turn enabled him to fly his airplane rather than drive his car to business-related engagements.

We are not convinced. The evidence established that petitioner immensely enjoys flying. Becoming an instrument-rated pilot represented a challenge and a personal accomplishment and enabled him to fly more often to more places. His "training" and "maintenance" flights constituted his pursuit of a hobby or represented the costs of engaging in this hobby. Section 262 expressly disallows a deduction for "personal, living, or family expenses."[4]

Petitioner alternatively contends that his flight training expenses and the costs of his training flights are deductible as "educational expenses." To give rise to deductible business expenses, the education in question must maintain or im-

---

[4]The cases petitioner cites to support the business relatedness of his training flights are inapposite. See Boser v. Commissioner, 77 T.C. 1124 (1981) (finding that airline second officer undertook training flights to meet requirements of his employer), aff'd without published opinion, (9th Cir. Dec. 22, 1983); Colangelo v. Commissioner, T.C. Memo. 1980-543 (finding that U.S. Navy flight surgeon undertook training flights to maintain the level of proficiency required by his job); Knudtson v. Commissioner, T.C. Memo. 1980-455 (finding that training time was necessary for taxpayer's sales business where his suppliers and customers were located throughout a very large geographic area); Sartor v. Commissioner, T.C. Memo. 1984-274 (same, where taxpayer's sales territory comprised six States and a portion of Canada).

[*21] prove skills "required by the individual in his employment or other trade or business" or meet "the express requirements of the individual's employer." Sec. 1.162-5(a)(1) and (2), Income Tax Regs. Petitioner plainly cannot satisfy either of these requirements.

In sum, we conclude that petitioner for 2007 may deduct as business expenses the airplane-related costs of $11,097 that respondent has allowed and that petitioner for 2006 may deduct as business expenses $5,357 or 18% of the airplane-related costs that he has substantiated (0.18 × $29,763 = $5,357). Under the rigorous requirements that section 274 imposes for "listed property," petitioner has failed to demonstrate a business purpose for any of the other flights that he classified as "business flights," "training flights," or "maintenance flights." See sec. 1.274-5T(b)(6), Temporary Income Tax Regs., supra.

2.    Airplane-Related Deprecation

Section 167 provides a depreciation deduction for certain tangible property used in the taxpayer's trade or business. Where property is used for business and personal purposes, the allowable deduction is measured by the percentage of business use. Noyce v. Commissioner, 97 T.C. 670, 693 (1991). A taxpayer may elect to deduct as a current expense the cost of section 179 property acquired and used in the active conduct of a trade or business and placed in service during the year.

[*22] Sec. 179(a), (b), (d)(1); sec. 1.179-4(a), Income Tax Regs.  To be eligible to make this election, the taxpayer must show that the business use of such property exceeds 50%.  Sec. 1.179-1(d), Income Tax Regs.; see also sec. 280F(b)(3) (relating to listed property).

Petitioner's business use of the airplane did not exceed 50% in either 2006 or 2007, and he is therefore ineligible to elect section 179 treatment.  Respondent concedes that petitioner is allowed a depreciation deduction under section 267 of $10,460 for 2007.  See sec. 1.280F-3T, Temporary Income Tax Regs., 49 Fed. Reg. 42707 (Oct. 24, 1984).  We conclude that petitioner should be allowed a comparable depreciation deduction for 2006, determined by reference to the 18% deemed business use of the airplane.  We sustain respondent's disallowance of deductions for the remaining depreciation and section 179 expense.

3.    Home Office Expenses

Respondent agrees that petitioner is entitled to deduct expenses properly allocable to the home office through which he conducted his law practice.  The question is whether the costs petitioner incurred in 2007 to replace his main sewer line and replace his backyard fence are "repair expenses" that may properly be included in this allocation.

**[*23]** Incidental repairs to property are deductible under section 162(a) if they keep the property in an ordinarily efficient operating condition and do not appreciably prolong its life or materially add to its value. Sec. 1.162-4, Income Tax Regs. By contrast, section 263(a)(1) generally prohibits deductions for capital expenditures, which include "[a]ny amount paid out * * * for permanent improvements or betterments made to increase the value of any property." "Repairs in the nature of replacements, to the extent that they arrest deterioration and appreciably prolong the life of the property," are generally required to be capitalized. Sec. 1.162-4, Income Tax Regs. "To repair is to restore to a sound state or to mend, while a replacement connotes a substitution." Jenkins v. Commissioner, T.C. Memo. 1982-407, 44 T.C.M. (CCH) 510, 511 (1982).

Although petitioner insists that the work done on his main sewer line consisted of "repairs," the contractor's paperwork and his own contemporaneous handwritten notes describe the work as follows: "new house sewer"; "replace plumbing and sewer"; "Bath/BR remodel-clean"; and "Copper Re-plumb/Main Sewer Replacement." While agreeing that his family "can't occupy the house legally if we don't have a sewer that works," he asserts, rather inconsistently, that replacement of the plumbing and main sewer line did not make his house more valuable. We conclude that these modifications to his home constitute a "better

[*24] ment made to increase the value of the property" or "appreciably prolong the life of the property." See Rowell v. Commissioner, T.C. Memo. 1988-410 (holding that improvements to office bathroom were capital expenditures and not currently deductible), aff'd, 884 F.2d 1085 (8th Cir. 1989); Guenther v. Commissioner, T.C. Memo. 1975-194 (finding that a new pipe is a capital expenditure and not a deductible repair). As such, they were capital improvements rather than repairs deductible under section 162.

We reach the same conclusion concerning petitioner's backyard fence. The contractor's paperwork and petitioner's contemporaneous notes describe this work as follows: "reconstruct fencing/block walls"; "payments to contractor for block wall"; and "block wall fence replacement." Petitioner himself described the pre-existing fence as "dilapidated." We find that petitioner did not repair, but rather replaced, his old fence and that the cost of this replacement represented a capital improvement.[5]

In sum, we sustain respondent's determination that the $32,050 cost of re-placing the main sewer line and the backyard fence was not for "repairs." Re-

---

[5]Petitioner testified that the Los Angeles County Assessor did not treat the cost of his new fence as a capital improvement for property tax purposes. That determination, if indeed it was made, has no bearing on whether the expenditure constitutes a "repair" for Federal income tax purposes.

[*25] spondent properly eliminated the cost of these alleged "repairs" in determining petitioner's allowable deduction for 2007 for business use of the home.

## B.    Penalties and Additions to Tax

### 1.    Accuracy-Related Penalty

The Code imposes a 20% accuracy-related penalty on any underpayment of tax that is attributable to (among other things) "[n]egligence or disregard of rules or regulations." See sec. 6662(a), (b)(1). "Negligence" is defined as "any failure to make a reasonable attempt to comply with the provisions of * * * [the Code]." Sec. 6662(c). The Commissioner bears the burden of production with respect to this penalty. Sec. 7491(c). Once the Commissioner satisfies his burden, the burden shifts to the taxpayer to prove that the penalty does not apply. Higbee v. Commissioner, 116 T.C. 438, 447 (2001). Respondent met his burden of production by showing that petitioner failed to maintain records adequate to substantiate his claimed deductions, to corroborate the business use of his airplane, or to demonstrate that the modifications to his residence were genuine repairs. The burden of proof thus shifts to petitioner.

The section 6662 accuracy-related penalty does not apply to any portion of an underpayment "if it is shown that there was a reasonable cause for such portion

[*26] and that the taxpayer acted in good faith" with respect thereto. Sec. 6664(c)(1). The decision whether the taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. Generally, the most important factor is a taxpayer's effort to assess his or her correct tax liability; other factors include the taxpayer's experience, knowledge, and education. Ibid.

Petitioner offered no evidence that he attempted to assess his correct tax liability. He testified that he prepared his returns using tax preparation software; he did not seek the advice of a competent tax professional. See sec. 1.6664-4(c)(1), Income Tax Regs. He had no colorable basis for taking the position that 100% of the cost of maintaining and operating his airplane constituted an expense of his law practice. It would be negligent for anyone to have taken this position; it is especially so for a licensed attorney. We accordingly sustain respondent's imposition of the accuracy-related penalty for 2006 and 2007.

2. Addition to Tax Under Section 6651(a)(1)

Section 6651(a)(1) provides for an addition to tax of 5% of the tax required to be shown on a return for each month or fraction thereof for which there is a failure to file the return, not to exceed 25% in toto. Failure to file a tax return on time renders the taxpayer liable for this addition to tax unless he shows that such

**[\*27]** failure was due to reasonable cause and not due to willful neglect. Sec. 6651(a)(1); United States v. Boyle, 469 U.S. 241, 245 (1985). Petitioner concedes his liability for the late-filing penalty for 2007. He disputes his liability for this penalty for 2006.

With extensions, petitioner's 2006 Federal income tax return was due on October 15, 2007. He filed his return on April 22, 2009, more than 18 months after the due date. Respondent has thus borne his burden of producing evidence that the return was not timely filed.

Before trial petitioner signed a stipulation of settled issues. He there stated with respect to his 2006 Federal income tax return: "Petitioner concedes that he is liable for the addition to tax for filing his income return late under I.R.C. § 6651-(a) (1)." At trial petitioner asked to be relieved of this concession, contending that extenuating circumstances, particularly his parents' ill health and his father's ensuing death in December 2007, constituted "reasonable cause" for his failure to file his 2006 tax return on time.

We conclude that petitioner should be held to his concession. Even if he were not, he would be liable for the addition to tax. The serious illness of the taxpayer or a member of his immediate family can constitute reasonable cause. Boyle, 469 U.S. at 243 n.1. But petitioner offered no convincing explanation as to

**[*28]** why concerns about his parents' health made it impossible for him to file his 2006 tax return by the extended due date of October 15, 2007.  Nor did he explain why he took another 18 months before ultimately filing that return on April 22, 2009; his father's death 15 months previously does not excuse such extreme tardiness.  We accordingly sustain respondent's imposition of the addition to tax under section 6651(a)(1) for 2006.

To reflect the foregoing,

Decisions will be entered under Rule 155.